Nannie Pierce v. J. M. Fort.

(Case No. 3984.)

1. Separate acknowledgment.— It is not the duty of one purchasing the homestead of others to see to it that the notary does his duty in making a privy examination of the wife when she signs the deed; all that the law requires of the purchaser is to act fairly, and not avail himself knowingly of the fraudulent conduct of others.

2. Husband and wife — Same.— The husband having control of the community and separate property of the wife, one negotiating for the purchase of either is not bound to contract with the wife; and when, on purchasing, he is presented with a deed signed by husband and wife, and duly acknowledged before the proper officer, he has a right to believe that the wife has freely and with full knowledge given her consent to the same, and is not affected by the fraud of others in procuring her signature, of which he has no knowledge.

3. Same.— Though if a fraud be perpetrated in securing her signature, and the purchaser, though ignorant of its character, is wilfully blind, that he may profit by it, he will be regarded as having perpetrated it, so far as it affects the validity of the deed.

4. Deed — Mortgage — Evidence.— It was error to instruct a jury that they could not find a deed absolute on its face to be a mortgage, unless the fact that it was so intended should be established by two witnesses, or by one witness and strong corroborating circumstances. This rule is applicable only to cases in which it is sought to establish a trust by proving the declarations of a deceased trustee, or when the trustee is testifying to the trust in his own interest. Distinguished from Moreland v. Barnhart, 44 Tex., 275; and Peters v. Clements, 46 Tex., 114, followed.

Statement of the case.

Appeal from Lamar. Tried below before the Hon. R. R. Gaines.

J. M. Ford brought suit against appellant in the district court of Lamar county, on the 12th day of October, 1876, for the recovery of four tracts of land described in the petition, and for possession, and also caused to be issued a writ of sequestration, which was levied on the lands in controversy. The value of the lands was alleged in the petition to be $2,500.

The defendant failing to replevy the lands within the time prescribed by law, the plaintiff, J. M. Fort, on the 26th day of October, 1876, gave a replevy bond, and the sheriff placed him in possession of the lands.

There were four tracts of land involved in the suit and claimed by plaintiff Fort, to wit: thirty-four acres, and one hundred acres of the Eubank headright, and twenty acres known as the Means tract, and fifty-seven acres of the Click headright, known as the Neathery land.

On the 28th day of June, 1878, the defendant Nannie Pierce filed an answer and cross-bill, in which she asked that W. B. Wright and U. Matthiessen be made parties, and alleged (after first filing a general denial and plea of "not guilty") that, on the 25th day of April, 1873, and for the five years last before that time, the thirty-four acre tract and the one hundred-acre tract, parts of the Eubank headright, were the homestead of herself and her husband, G. W. Pierce, and their minor children, and so continued until the 29th day of July, 1876, which was the date of her husband's death; that she and her minor children still continue to occupy the one hundred and thirty-four acres, claiming and using it as a homestead until October or November, 1876; that they had never acquired any other homestead.

That, on the 25th day of April, 1873, her husband, G. W. Pierce, borrowed from W. B. Wright $600; that, to secure its payment, she was induced by her husband, W. B. Wright, and one J. M. Long, to join her husband in what appeared to be an absolute deed for all the land in controversy, two of which tracts of land were her homestead; that she did not read the deed, nor was it read to her; that she did not know, nor was she informed, that her homestead was included in the deed; but, on the contrary, was informed by her husband, G. W. Pierce, that it was a mortgage on the twenty acre and fifty-seven acre tracts of land, which were not her homestead, given to secure the payment of the $600; that she was informed by W. B. Wright, and by J. M. Long, that it was intended only to secure the payment of said borrowed money; that, relying on and

believing said statements, she signed the instrument and acknowledged it before J. M. Long, notary, in the presence of her husband, not knowing its contents.

She alleged that the fifty-seven and the twenty acre tracts were worth $10 per acre, and ample security for the debt; that her homestead of one hundred and thirty-four acres was, at the time, worth $25 per acre; that there were about seventy-five acres of it in cultivation; that the improvements were worth $2,000, and the annual rental value was $500. That the deed from her and her husband to W. B. Wright was only a mortgage, and so intended, and asked that it be canceled. Defendant alleged that W. B. Wright made a deed to U. Matthiessen, reciting a note for $1,500 and one for $300 as the consideration, alleging that the same was only colorable, without consideration and not *bona fide*, and the whole transaction was a fraud, without either a valuable or adequate consideration; charged that Matthiessen had actual and constructive notice that the one hundred and thirty-four acres was defendant's homestead, that the deed from her and her husband to W. B. Wright was only a mortgage, and that the title of W. B. Wright, his vendor, was in fraud of the rights of defendant and her children.

The answer set up the transfer by Matthiessen to plaintiff, J. M. Fort, dated 11th January, 1876, which deed purported to be in consideration of $200 cash, and $1,800 in the notes of plaintiff Fort, and asked for its cancellation; that said deed from Matthiessen to Fort was only colorable, not *bona fide*, but a fraud upon the defendant and her children; that Fort has not paid the consideration named in the deed to him; charged Fort with actual and constructive notice at and before his pretended purchase of the defendant's rights, and that the one hundred and thirty-four acres was her homestead, and that the deed from defendant and her husband to W. B. Wright was only a mortgage.

The answer charges that W. B. Wright, U. Matthiessen and plaintiff J. M. Fort combined and confederated together to obtain two hundred and eleven acres of land, worth $4,120, for $600, part of which land they knew to be her homestead — knowing that the deed to W. B. Wright was a mortgage; that there had been no administration on the estate of G. W. Pierce, deceased; alleging her ouster by Fort in the fall of 1876, by virtue of a writ of sequestration, and that he wrongfully seized and carried away the crop raised by her and her tenants in the year 1876, and of the value of $500; that the thirty-four acre tract of land was part of the homestead of Anderson Pierce, her deceased husband's father, but that she and

her husband had resided on it, and that Anderson Pierce and wife never conveyed it to any one until 31st of October, 1876, when they deeded it to defendant and her children.

Defendant disclaimed title or possession to the twenty acres and the fifty-seven acres, and asked that the same be subjected to W. B. Wright's mortgage lien; for a cancellation of all of the deeds, so far as they affected her homestead of one hundred and thirty-four acres; and for possession, and for $500 per annum rent for the years 1877 and 1878, and $500 for the crop taken by plaintiff, raised in the year 1876, and for general relief.

By an amendment defendant set up a judgment lien, execution and sale thereunder of all U. Matthiessen's interest in the land, which lien existed prior to Fort's purchase of the land, and charged that defendant Nannie purchased the land at the sheriff's sale, paid the purchase money, and took a deed therefor.

Defendant, in connection with her amended answer, propounded fifteen written interrogatories to plaintiff J. M. Fort.

Plaintiff filed an amended petition, and answered to the interrogatories of defendant, in which he alleged that he (plaintiff) purchased the land from U. Matthiessen, but when he came to pay him for it, he found that Matthiessen had not paid for it, as the deed showed. It was then agreed between all the parties that Fort should deliver his notes for the purchase money to Wright and Matthiessen, take up his notes which had been given to Wright, which was done, Wright retaining a vendor's lien on the lands.

Plaintiff also alleged that W. B. Wright had a good and perfect deed from defendant and her husband, and not a mortgage or deed of trust, and that plaintiff Fort never heard of any defect in the title until after G. W. Pierce's death; alleged that after he purchased the lands, G. W. Pierce rented the premises from him and gave him an obligation for the rent.

By amendment the defendant alleged that the twenty acre and the fifty-seven acre tracts of land, which she did not claim, together with the grain and produce taken by plaintiff from her homestead, and the rents thereof since plaintiff had possession of her homestead, exceed the amount due by her deceased husband, G. W. Pierce, to W. B. Wright; and asked for an adjustment of the equities of the parties, and for that purpose that W. B. Wright and U. Matthiessen be made parties.

W. B. Wright and U. Matthiessen excepted to the sufficiency of plaintiff's cross bill, making them parties: 1st. Because they were not proper and necessary parties. 2d. Because the cross bill set up

two distinct and inconsistent matters between parties having no interest in the subject matter. 3d. Because the action originally was an action of trespass to try title as between plaintiff J. M. Fort and defendant Nannie Pierce.

They also pleaded a general denial, and set up a good and valid conveyance from G. W. Pierce and wife, Nannie, to W. B. Wright, and a sale made in good faith and fair dealing. Also that G. W. Pierce had not paid for two of the tracts of land, and that they were afterwards sold to satisfy vendor's lien, and bought in by Johnson, who afterwards sold and conveyed them to W. B. Wright; further alleging that the "thirty-four acres set out as having been sold and conveyed by Anderson Pierce and wife to defendant and her children was a fraud and a cheat, and so intended;" that it had been sold or given to G. W. Pierce some twenty years before this controversy arose; that he had been in possession, made valuable improvements, using the same and paying taxes on it up to the time of his death; that before W. B. Wright purchased the land, he inquired of Anderson Pierce about the title, and was told by him that it was all right, and that he had no claim to any of it, whereupon he closed the trade.

On the 19th day of April, the plaintiff, J. M. Fort, filed his first supplemental petition, in which he denied all the allegations in defendant's cross bill and answer, and amendments; and adopting the original answers filed by W. B. Wright and U. Matthiessen.

The court submitted sixteen special issues to the jury in the charge, and upon their finding on these issues rendered its judgment for the plaintiff. The jury found that plaintiff and his vendor, Matthiessen, bought with notice of the defendant's claim to the land.

*Hale & Scott*, for appellant, cited on the proposition that the fraud committed on the wife in procuring her signature vitiated the deed irrespective of the purchaser's knowledge: Pasch. Dig., art. 1003; Berry v. Donley, 26 Tex., 737; Fitzgerald v. Turner, 43 Tex., 79; Moreland v. Barnhart, 44 Tex., 279; Hudson v. Wilkinson, 45 Tex., 451–3; Humphries v. Freeman, 22 Tex., 52–3; Roy v. Bremond, 22 Tex., 626.

*W. B. Wright*, for appellee, cited Pool v. Chase & Co., 46 Tex., 207; 84 Pa. St., 442; 53 Miss., 331; Moreland v. Barnhart, 44 Tex., 275; Peters v. Clements, 46 Tex., 114; Blankenship v. Douglas, 26 Tex., 225.

DELANY, J. COM. APP.— The plaintiff sued for and sequestered four tracts of land. The defendant surrenders two of these tracts, and asserts her right to the remaining two, comprising one hundred and thirty-four acres, which she claims as having been the homestead of herself and her deceased husband, and as being still the homestead of herself and her minor children.

As the plaintiff and his immediate vendor, Matthiessen, bought with notice of this claim of the defendant, they stand in the position which their vendor, Wright, would have occupied, had he been plaintiff.

The matter to be determined, therefore, is whether the deed from Pierce and wife to Wright, made April 25, 1873, was sufficient to preclude the homestead rights of the defendant, and whether the issues of fact which were necessary to determine this question were fairly submitted to the jury.

The defendant does not deny the execution of the instrument; but she insists that she signed it, believing it to be a mortgage upon other lands than her homestead; that it had been fraudulently represented to her as such that the officer who took the acknowledgment did not explain it to her, and that the plaintiff and his vendors had notice of the fraud.

Upon this part of the case the defendant asked the following charge, which was refused: " If you believe from the evidence that . . . the defendant Nannie Pierce had been informed that it (the deed) was only a mortgage to secure the payment of borrowed money, and that she believed it, and was not informed by W. B. Wright or any other person that it was an absolute deed; and if you further believe that defendant Nannie Pierce had not read the deed, and did not know, or was not informed, what land was embraced in it, or what the character of the instrument was, then I charge you that such an instrument is not a valid deed against the defendant, sufficient to convey her homestead."

In our opinion there was no error in refusing this charge. It was not the duty of Wright to become the adviser of Mrs. Pierce in the contract which she was about to make; nor was he bound to see to it that the notary did his duty in the matter of her privy examination. All that the law required of him was that he should act fairly, and not avail himself knowingly of the fraudulent conduct of others.

The law does not presume that the husband will practice a fraud upon his wife, nor does it require that one who deals with the husband shall so presume. As the law makes him the head of the

community, and gives him the management and control of the wife's separate property, it would be natural to suppose that all negotiations for the transfer of property, whether community or separate, would be made with the husband.

When, therefore, one who has contracted with the husband for the purchase of the homestead or the separate property of the wife, is presented with a deed signed by the husband and wife and duly acknowledged before the proper officer, he has a right to suppose that the wife has freely and with full knowledge given her consent to the sale.

This disposes of the first assignment of error. The second assignment is unimportant; but the third, we think, must be sustained. It complains of the fourth special issue submitted to the jury, which is in these words: "Did or did not W. B. Wright inform defendant, at the time of the execution of the deed, that said deed was only intended to secure the payment of loaned money?"

The jury, of course, answered this question in the negative, for there was not the slightest evidence that Wright had done anything of the kind. It was not, therefore, a proper issue in the case, and it is difficult to see how it could fail to mislead the jury. If there had been any testimony tending to show that Wright had made any such statements to Mrs. Pierce as are mentioned in the charge, it might have been properly submitted to the jury.

Under the state of the evidence produced on the trial, the real question was not whether Wright had practiced a positive fraud by deceiving Mrs. Pierce, but whether a fraud had been practiced upon her by her husband and the notary — one or both,— and did Wright know the fact, or was he in a position to know it, and did he shut his eyes to keep from knowing it. For if the fraud was practiced upon her by those whom she trusted, and he was wilfully blind in order that he might profit by it, he was as guilty as those who perpetrated the fraud.

In the case of Shelby v. Burtis, 18 Tex., 645, where the wife, in her answer, complained bitterly of the deceit practiced upon her by her husband's attorney, concerning the liability of her separate property for her engagements, the chief justice said (p. 649), "It is not without some hesitation that we have come to the conclusion that there was no error in sustaining the demurrer to the separate answer of the appellant Rebecca."

And again on page 651: "The wife, in her separate answer, charges that before signing she was told by an attorney employed by her husband, that her signing said notes and deed was a mere matter of

form and that she would not be bound by them, or either of them, and that the creditor Walbridge was present and knew the most, if not, as she believed, all the facts stated in her answer. Had she averred distinctly that the creditor knew that she had been advised by counsel that her signature was a mere matter of form, and not binding upon her, this, it is believed, would have been such a fraud upon her, by his consent and collusion, as to have been a ground for relief."

The fourth and fifth assignments of error are waived; but in our opinion the sixth assignment is well taken. The court, in the fifth special issue, submitted to the jury the question whether the deed from Pierce and wife to Wright was an absolute deed or a mortgage. This question was properly submitted to the jury, inasmuch as the deed is absolute on its face; and if it is to have the effect of a mortgage, that result must be brought about by parol proof.

But as to the quantity and character of the proof necessary to show that the deed was a mortgage, the court instructed the jury as follows: "I furthermore charge you that the law will not warrant you in finding the deed a mortgage, unless the fact that it was intended to be such be proven by at least two witnesses, or by one witness and strong corroborating circumstances."

This was error. In support of it counsel for appellee refers us to the case of Moreland v. Barnhart, 44 Tex., 275. In that case, Mr. Justice Reeves (on page 283) remarks as follows:

" That a deed absolute on its face may be shown by parol to be intended as a trust, has been often decided by this court. The trust must be shown with clearness and certainty, and *in some of the cases* it has been held that it must be shown by the testimony of more than one witness, unless his testimony be confirmed by corroborating circumstances."

He cites a number of cases from our reports, and among them Miller v. Thatcher, 9 Tex., 482, in which the technical rule is laid down as it was given by the judge below in the trial of the present cause.

But in the later case of Gaines v. The Exchange Bank, decided at Austin in 1882 (1 Law Reporter, p. 477), it was held that this technical rule was applicable only to cases in which it was sought to establish the trust by proving the declarations of a deceased trustee, or where the trustee was testifying to the trust in his own interest.

In answer to the question contained in the twelfth special issue, the jury found that after Wright had sold to Matthiessen and before the conveyance of Matthiessen to Fort, the land was sold under a

valid execution against Matthiessen, and was bought by Mrs. Pierce, who received the sheriff's deed. Whatever interest Matthiessen had in the land, at the date of that sale, was thus transferred to the defendant. Baker v. Clepper, 26 Tex., 629. So that Matthiessen's deed to Fort, considered by itself, passed no interest in the land, because he had none to convey. The interest which Matthiessen had in the land at the date of the sheriff's sale, and which passed to Mrs. Pierce by the sale, was an equity to pay the purchase money notes to W. B. Wright and receive a complete title to the land.

If, after the sheriff's sale, Wright had brought suit to foreclose against Matthiessen, without making Mrs. Pierce a party, the decree would not have affected her right — she being in possession and her deed on record. And if he had made her a party, she might have tendered the amount of the purchase money and demanded the title. Peters v. Clements, 46 Tex., 114, and many other cases. This is, perhaps, as much as we ought to say.

Whether W. B. Wright had a good and valid title when he conveyed to Matthiessen, that is, whether the conveyance from Pierce and wife to Wright was an absolute deed or a mortgage, is a question to be determined after an examination of all the circumstances attending the transaction and connected with it, which may throw light upon its character.

Upon the question whether a fraud was practiced upon Mrs. Pierce in that matter, and, if so, whether Wright is chargeable with notice of it, we have said enough already.

Our opinion is that the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted December 7, 1883.]