SYKES et ux. v. SYKES.   (No. 10478.)*

(Court of Civil Appeals of Texas. Fort Worth. Jan. 12, 1924. Rehearing Denied March 29, 1924.)

1. Trusts ⬤⇒89(4)—Evidence held to establish oral agreement for plaintiff to have half interest in apartment building.

Plaintiff's testimony, supported by that of his wife and corroborating circumstances, *held* sufficient to establish an oral agreement between plaintiff and defendants that each should own an undivided one-half interest in an apartment building to be erected in consideration of respective amounts paid by each.

2. New trial ⬤⇒99—Denying for newly discovered evidence held not to show abuse of discretion.

Court did not abuse its discretion in denying a motion for new trial, where the newly discovered evidence, consisting of plaintiff's statement as to his income to an internal revenue officer, would have been material only in rebutting plaintiff's testimony, and would probably not have changed result of trial.

On Motion for Rehearing.

3. Trusts ⬤⇒89(5)—Restriction of rule requiring more than one witness to establish oral trust stated.

The technical rule that an oral trust must be shown by the testimony of more than one witness, unless his testimony be confirmed by corroborating circumstances, applies only to cases in which a trust is sought to be established by proving the declarations of a deceased trustee, or where the trustee is testifying to the trust in his own interest.

4. Appeal and error ⬤⇒173(9) — Contention raised first time on motion for rehearing held too late.

Contention that plaintiff's claim of a laborer's lien on an apartment building constituted an estoppel to maintain a suit on an oral agreement for a one-half interest therein came too late on a motion for rehearing, where defendants filed no plea alleging such election and claiming same as an estoppel, and did not urge such claim in their motion for a new trial, or in their brief upon original hearing.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by John Sykes against R. G. Sykes and wife. Judgment for plaintiff, and defendants appeal. Affirmed.

Ocie Speer, of Fort Worth, Weldon, McDonald & Cummings, of Wichita Falls, Buel R. Wood, of Los Angeles, Cal., and Simpson, Moore, Parker & Rawlings, for appellants.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellee.

DUNKLIN, J. R. G. Sykes and wife, Mrs. Ruby Sykes, have prosecuted this writ of error from a judgment awarding to John Sykes an undivided half interest in an apartment house and the lots upon which it was constructed, situated in the town of Electra, and the legal title to which stood in the name of Mrs. Ruby Sykes.

John Sykes was the father of R. G. Sykes. He instituted this suit against his son and daughter-in-law, alleging that plaintiff and defendants entered into an oral agreement to purchase three lots in the town of Electra and erect an apartment house thereon, plaintiff to furnish one half of the cost of said lots and building and the defendants to furnish the other half. According to further allegations in the petition it was further agreed as a part of said oral contract that plaintiff should own an undivided half interest and the defendants the other undivided half interest in said lots and building to be constructed thereon in consideration of the respective amounts to be paid by each. It was

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction May 28, 1924.

further alleged by plaintiff that the lots had been purchased and the building erected thereon all in pursuance of the contract, at a total cost of approximately $16,000, one half of which had been advanced and furnished by the plaintiff and the other half by the defendants.

According to further allegations it was understood and agreed between the parties that title to the lots should be taken in the name of the defendant Mrs. Ruby Sykes and the plaintiff, but the defendants fraudulently procured the deed to be executed to Mrs. Ruby Sykes alone. As soon as plaintiff discovered the fraud the defendants assured him that the deed had been so taken merely as a matter of convenience, and that the defendants would execute and deliver to plaintiff a conveyance of an undivided one-half interest to the property, but defendants had failed and refused to comply with that agreement upon demand made by plaintiff.

It was further alleged that it was understood between the parties that plaintiff, who was 75 years old, and his wife, who had been an invalid for 13 years, should occupy one of the apartments in said building as a home and should share in the profits derived from the operation of the building, but their right to so occupy an apartment and to share in such profits had been denied plaintiff by the defendants, who had been receiving an income from the building of not less than $200 per month, and defendants have instituted legal proceedings to oust plaintiff from the building.

[1] The principal assignment of error presented here presents the contention that the judgment of the trial court should be reversed, because there was a lack of sufficient evidence to support it, and that it was contrary to the great weight of the evidence introduced upon the trial. The following authorities are cited in support of the proposition that a trust in real estate, as against a person holding the legal title thereto, cannot be established by the testimony of one witness who is interested, unless his testimony is supported by corroborative circumstances. Smalley v. Paine, 62 Tex. Civ. App. 52, 130 S. W. 739, and authorities there cited; Neely v. Boyd, 145 Fed. 174, 76 C. C. A. 142; Kanaman v. Hubbard (Tex. Civ. App.) 160 S. W. 304; Stolle v. Kanetzky (Tex. Civ. App.) 238 S. W. 724; Schaff v. Hill (Tex. Civ. App.) 238 S. W. 1037.

It is insisted that the judgment in plaintiff's favor is unsupported by any testimony introduced by him, except his own, upon the vital issue of the alleged parol agreement between him and the defendants, by the terms of which each party was to furnish one-half the cost of the property and to own an undivided one-half interest in the same. With that contention we cannot agree. The testimony of plaintiff was specific as to the alleged oral agreement, and his testimony was strongly corroborated by that of his wife, and appellants do not contend that she likewise was an interested party plaintiff and that her testimony should likewise be corroborated. She not only testified that it was the understanding between the parties that the defendants would have an undivided one-half interest in the property and the plaintiff the remaining undivided one-half interest, and that it was planned to build a home for both families, but she further testified that in the first conversation between the parties, in which the acquisition of the property was discussed, the defendant Mrs. Ruby Sykes said to the plaintiff:

"Father, we are buying the lots and building this apartment house together. I have not got money enough to do it all alone."

That later Mrs. Ruby Sykes also told the witness she wanted plaintiff to have everything he put into the property. The proof showed that after the house was finished Mrs. Ruby Sykes went to Oklahoma, where she remained for several months, and the defendant R. G. Sykes testified, in part, as follows, with reference to a conversation between him and his father, John Sykes:

"There was a conversation took place with reference to shaping up our affairs about the time I went to Oklahoma with Mrs. Sykes; it was before she left; my wife was sick at the time, and she went up there for her health, and was gone about three and a half months. The conversation was between my father and I, he said that my wife was going home, he at that time did ask me to fix up matters between us, as my wife was going off, and she was sick— some sort of contract so that he could show the agreement he and I had. I told him if he would fix it up I would sign it. I believe he told me that he would, and said that at his death the lot and house there so far as his interest was concerned would go to Madeline."

Madeline, mentioned in that testimony, was the child of defendants.

Mrs. Ruby Sykes testified, in part, as follows:

"Yes, we looked at the lots before we purchased them, and my father-in-law was along. There was a conversation at that time with reference to those lots. Well, we all just looked at the lots, it was a beautiful location, good business property, and a nice place, and that it suited us all."

Although she later testified that in referring to "all" she meant only herself, her husband, and her child. She further testified, in part, as follows:

"Well, I was busy packing, I was going away, and I was packing my things, I was real busy, and I had been selling tickets at the Grand Theatre, but that afternoon I was not supposed to have to sell any tickets, and Mr. Sykes was over there at the theatre, and decided to have a matinee, I suppose he saw it was to his benefit to do so, so he sent over for me to come over in a hurry and sell tickets

for him, and so I dropped everything in a hurry, and began to dress, and I had to go to their bedroom to get a garment of some kind belonging to me that was down there, and grandpa was down in there and he said, 'Ruby you are going back to Oklahoma, and I am going back to Michigan,' and he says, 'I want to feel safe and have everything protected, and what I have in the building I want to give to Madeline; it is a protection,' and it surprised me, because it was the first time I had ever had any such conversation or ever heard of him claiming that he had anything to claim, and I said, 'All right, grandpa, if you think that is best,' because I do not know anything about law, and I felt that he was better informed, and knew what would be the best way to protect the property, if there was the slightest doubt, and I knew there were certain debts against the building, and he, if he thought it best to have it, put, whatever it was, in her name, and he said, 'It is a protection, and Gene, he has such queer ideas, and he wants to get up and leave, and I want it well protected.' And I don't know anything about law, and I said, 'All right, grandpa, if that is the way you think best, and that is the best thing, all right,' and that is the last thing that was ever said about it."

The defendant R. G. Sykes admitted that his father had furnished as much as $2,400 in the construction of the building, and did a large amount of the work himself in superintending the construction of the same. In testifying in his own behalf he made many contradictory statements. One of his statements was that his father had agreed to make a gift to Mrs. Ruby Sykes of all the money he put into the building. Another statement was to the effect that the money furnished by his father was furnished as a loan. He was not at all clear in his statement as to the cost of the building. According to some of his statements the building cost only about $13,000, and according to another statement is cost several thousand dollars more than that. He testified that he borrowed some of the money that went into the building, but also testified that his father signed the loan with him. The evidence showed that plaintiff was 76 years old at the time of the trial; that his wife was an invalid who had been in bed for 13 years; that he and his wife had come from Michigan to Electra where R. G. Sykes, his son, was living; that as soon as the apartment house was finished they took charge of one of the apartments and owned no other home; that defendants endeavored to oust them by proceedings in the justice court. Plaintiff further testified that he had advanced and contributed more than $8,000 in the purchase of the lots in controversy and the erection of the apartment house thereon. There was no showing that the defendants have any intention of reimbursing him for any part of those expenditures.

G. F. Leibus testified as a witness for the defendants that in a conversation with plaintiff he understood plaintiff to say that he was going to build R. G. Sykes a home, that "he was helping Gene (R. G. Sykes) out; he gave me that understanding, in helping his child to acquire a home."

N. P. Pricking, another witness for the defendants, testified, in substance, that plaintiff told him that he had come from Michigan to build R. G. Sykes a home.

B. H. Loden, another witness for defendants, testified, in substance, that plaintiff told him that he was going to build his son, R. G. Sykes, a home, and give it to him. H. Wolfe, from whom the three lots in controversy were purchased, and who executed the deed in favor of. Mrs. Ruby Sykes, testified for defendants that plaintiff and defendant R. G. Sykes came to his office at the time the deed was executed, and that witness asked them "whose name I should put in there, in that deed, and so Mr. Sykes, the elder, said make it to Mrs. R. G. Sykes, and I don't know, some other little remark, I don't know, something about taking it in the lady's name so it would not be spent, something of that kind; the younger man said that will be all right, so then I had the deed acknowledged in their presence before the notary. The elder Mr. Sykes was the one who told me to make that deed out to Mrs. R. G. Sykes."

After a due consideration of all the evidence, we have reached the conclusion that we cannot sustain the contention made by plaintiffs in error that the judgment should be reversed for lack of sufficient evidence to sustain it.

Another assignment of error is presented to the refusal of defendants' motion for a new trial, based upon alleged newly discovered evidence.

[2] It was alleged in the motion that since the trial of the case the defendants had discovered another witness, Henry Wampler, division chief of Internal Revenue Department of the United States government, located at Wichita Falls, Tex., whose testimony would be material to the defense upon another trial. The affidavit of counsel for defendants was attached to the motion for new trial. According to the affidavit Wampler told counsel that "in a conversation with the plaintiff, John Sykes, after having testified in the said suit as above set out, the said John Sykes stated to him as a reason for not filing an income tax return for the years 1919 and 1920 that he had not earned any money during that period." Counsel further stated that the said Henry Wampler refused to make a voluntary affidavit of the said fact, but stated that, "if he was subpoenaed by this honorable court upon a hearing of this motion, he would testify according to the facts so stated."

As alleged in the motion for new trial the plaintiff, John Sykes, had testified that he had furnished more than $8,000 in the payment of the lots and the building erected

thereon; that $1,100 of that amount was brought with him from the state of Michigan, and the remainder earned by him in construction work in the town of Electra during the years 1919 and 1920. It was further alleged in the motion that the newly discovered evidence of Henry Wampler would be material in rebuttal of that testimony of the plaintiff. The only purpose such testimony could have served would have been to discredit the testimony of plaintiff in the matter above pointed out, and we are unable to say that the trial judge abused his discretion in refusing to grant a new trial in order to allow the introduction of the proposed testimony of Henry Wampler. To say the least, it does not reasonably appear that it is likely that such testimony, if it had been introduced, would have changed the result of the last trial. Clute v. Ewing, 21 Tex. 677; Houston City Ry. Co. v. Sciacca, 80 Tex. 350, 16 S. W. 31; Scranton v. Tilley, 16 Tex. 183; Glover v. Pfeuffer (Tex. Civ. App.) 163 S. W. 984; Woldert v. Pukli (Tex. Civ. App.) 221 S. W. 1112.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

[3] In Pierce v. Fort, 60 Tex. 464, the following quotation was made from Moreland v. Barnhart, 44 Tex. 275:

"That a deed absolute on its face may be shown by parol to be intended as a trust, has been often decided by this court. The trust must be shown with clearness and certainty, and in some of the cases it has been held that it must be shown by the testimony of more than one witness, unless his testimony be confirmed by corroborating circumstances.

Following that quotation, the court said that a number of other decisions, including Miller v. Thatcher, 9 Tex. 482, 60 Am. Dec. 172, laid down the same technical rule. The court then made the following announcement:

"But in the later case of Gaines v. The Exchange Bank, decided at Austin in 1882 (1 Law Reporter, p. 477), it was held that this technical rule was applicable only to cases in which it was sought to establish the trust by proving the declarations of a deceased trustee, or where the trustee was testifying to the trust in his own interest."

To the same effect are the following decisions: American Freehold Land Mortgage Co. v. Pace, 23 Tex. Civ. App. 222, 56 S. W. 393 (local citation), and authorities there cited; Allen v. Williams (Tex. Civ. App.) 218 S. W. 135; Graves v. Graves (Tex. Civ. App.) 232 S. W. 543, writ of error refused.

Furthermore, the testimony pointed out in the opinion on original hearing, corroborated by the testimony of John Sykes, was sufficient to satisfy the strict technical rule invoked by appellants in their motion for rehearing.

[4] The record shows that prior to the institution of the present suit attorneys for John Sykes filed suit in his name, in which he claimed a laborer's lien upon the property, but that suit was later dismissed, and the present suit was instituted by and upon the advice of other counsel. In the motion for rehearing it is insisted that the institution of such former suit constituted an election to claim an indebtedness for the amount John Sykes had incurred in the erection of the building, and that such election operated as an estoppel against him to maintain the present suit. A sufficient answer to that contention is that appellants filed no plea alleging such election and claiming the same as an estoppel. Furthermore, appellants never urged that claim in their motion for a new trial as a ground for setting aside the judgment, nor did they urge that defense in their brief upon original hearing in this court. Clearly it is too late now, on motion for rehearing for the first time, to urge that contention as a reason for setting aside the judgment heretofore rendered by this court, even though it should be said that the estoppel claimed would otherwise be applicable, and which question it is unnecessary for us to decide, and which we do not determine.

The motion for rehearing is overruled.