**ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. LEWIS.** (No. 3408.)

Court of Civil Appeals of Texas. Texarkana. July 21, 1927.

Rehearing Denied Sept. 15, 1927.

**1. Appeal and error**  996—Where evidence would support either finding that warning was given at railroad crossing or contrary finding, jury's verdict held conclusive (Rev. St. 1925, art. 6371).

In an action for personal injuries sustained in collision between locomotive and automobile at crossing, where evidence could have supported either a finding that a warning had been given as required by Rev. St. 1925, art. 6371, or a contrary finding, jury's verdict *held* conclusive.

**2. Railroads**  350(11)—Whether speed of train at crossing was excessive held for jury.

In an action against railroad company for personal injuries sustained in crossing accident,

whether speed of train at crossing was excessive *held* for jury.

**3. Railroads ☞307(7)—Unless railroad crossing is unusually hazardous, railroad company need not provide means for giving warning.**

Unless a railroad crossing is unusually hazardous, railroad company owes no duty to public to provide means for ·giving warning of approaching trains.

**4. Railroads ☞348(3)—Evidence held· to warrant finding that crossing was unusually dangerous, so that railroad was negligent in not providing means of warning travelers.**

In action against railroad company for personal injuries sustained by plaintiff when automobile, in which he was riding, was struck by train at crossing, evidence *held* to warrant jury's finding that the railroad crossing was unusually hazardous, so that the railroad company was guilty of negligence in failing to provide means for ·warning travelers approaching crossing.

**5. Appeal and error ☞930(2)—In deciding whether refusal to give instructions was prejudicial, it will not be assumed jury ignored instructions given.**

In deciding whether or not possible error in refusing to give instructions requested was prejudicial, it will not be assumed that the jury ignored the instructions given.

**6. Appeal and error ☞1170(9)—Failure to give requested instruction on contributory negligence in railroad crossing accident case, if error, held harmless (rule 62a).**

In action for injuries sustained by plaintiff when automobile, in which he was riding, was struck by train at crossing, refusing charge ·to find plaintiff contributorily negligent, if, by exercise of ordinary care, he could have caused automobile driver to avoid collision, *held* harmless within rule 62a for Courts of Civil Appeals, in view of testimony, and court's instructions that plaintiff was contributorily negligent unless he was not at fault in failing to discover train sooner than he did.

**7. Appeal and error ☞1069(I)—Jury's misconduct in railroad accident case, in discussing railroad's settlement offer, held· harmless where discussion was after verdict was reached.**

Jurors' misconduct in railroad accident case, in discussing in the jury room an offer of settlement made by the railroad company to the plaintiff, *held* harmless, where one juror testified that the discussion was after the verdict, which was, finally rendered, had already been reached, so that no injury resulted from the alleged misconduct.

**8. New trial ☞144—Trial court could accept one juror's testimony that misconduct in jury room was not prejudicial as against testimony of several others.**

Trial court had a right to believe testimony of one juror to the effect that misconduct in jury room in discussing railroad's settlement offer was had after verdict had been reached, and so was not prejudicial, as against contrary testimony of several others.

**9. Damages ☞132(7)—$8,500 held not excessive damages for broken leg, resulting in permanent shortening of leg, and lesser injuries.**

$8,500 *held* not excessive verdict in railroad accident ,case for broken leg, resulting in a permanent shortening of that leg from 1 to 1½ inches, and other lesser injuries.

**10. New trial ☞102(I)—Where diligent inquiry was not made before trial to ascertain extent of plaintiff's injury, court did not abuse discretion in· refusing defendant new trial for newly discovered evidence.**

In an action against a railroad company for personal injuries, where company did not diligently inquire from plaintiff's neighbors before the trial to ascertain how seriously plaintiff was injured, court did not abuse its discretion in refusing railroad company a new trial because of newly discovered evidence of one of plaintiff's neighbors whose testimony would show that plaintiff was in bad physical condition before the accident occurred.

Appeal from District Court, Camp County; Hugh Carney, Judge.

Suit by John Wesley Lewis against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

This was a suit by appellee against appellant for damages for injury he claimed he suffered to his person as the result of a collision between an automobile he was riding in and one of appellant's passenger trains. Appellee alleged that the collision occurred at a point where appellant's line of railway crossed a public road in Pittsburg (a town with 2,500 to 3,500 inhabitants), and that same was due to negligence on the part of appellant and its employees in charge of the train, in that said employees failed to blow the whistle and ring the bell of the locomotive as it approached the crossing, as required by law (article 6371, R. S. 1925), in that said employees operated said train over said crossing at "a dangerous, excessive, unreasonable, and high rate of speed," and in that appellant failed "to have and maintain at said crossing at said time a flagman, watchman, gates, bell, or gong to warn people about to pass over said crossing of the approach of its trains."

It appeared from evidence heard at the trial that the accident occurred at about 10 o'clock of the morning of Saturday, November 14, 1925. At the point where it occurred appellant's main line track ran north and south and the road ran east and west. Thirty-seven feet west of said track and running parallel with it was a side or switching track, and 137 feet farther west and also running parallel with said main line track was another side or switching track. Between the two side tracks, about 5 feet west of the one first mentioned and about 15 feet north of the road, was a structure 107 feet

north and south by 114 feet east and west, known as the Fertilizer building, which obscured the view a person traveling the road and approaching the crossing from the west had of the main line track of the crossing. The testimony was that such a person could not see any distance on the main track north of the crossing until he passed east of the southeast corner of said building, that after he passed that corner and reached a point 14 feet west of the center of the side track first mentioned he could see 250 feet north on said main line track, and when he reached a point 3 feet farther east could see 1,000 feet north on said main line track. The automobile in which appellee was riding, moving east on the street at the rate of 5 or 6 miles an hour, reached the crossing at the time the train, moving south on the main line track, reached same. Appellee was sitting on the front seat of the automobile, to the right of the driver thereof, a boy about 15 years old named Gaylord Rogers. The boy's father and two boys named Sheppard were sitting on the rear seat of the automobile. According to the testimony of appellee as a witness, the train was "something like 40 or 50 feet from the crossing" when he first saw it. He jumped from the automobile as soon thereafter as he could. About that time the boy was trying to avoid a collision with the train by turning the automobile northward. He failed, and some part of the locomotive striking the right front spring of the automobile turned it around and against appellee, thereby injuring him, he alleged.

The case was submitted to the jury in a general charge in which the court, in appropriate language, instructed them to find for appellee if they believed appellant was guilty of negligence in any of the ways charged which was a proximate cause of the accident. The verdict was a general one and in appellee's favor for $8,500.

King, Mahaffey & Wheeler, of Texarkana, J. A. Ward, of Mt. Pleasant, and J. A. Guest, of Pittsburg, for appellant.

J. H. Beavers, of Winnsboro, and C. Everett Bryson, of Pittsburg, for appellee.

WILLSON, C. J. (after stating the facts as above). We think the contention that the evidence did not warrant a finding that appellant was guilty of actionable negligence in any of the ways charged against it should be overruled.

[1] The evidence as to whether those in charge of the train complied with the law (article 6371, R. S. 1925), requiring them to blow the whistle and ring the bell of the locomotive as it approached the crossing, was conflicting. That tending to show the law was ignored was sufficient to support the finding involved in the verdict, and that tending to show it was complied with would have supported a finding to that effect. Such being the state of the evidence, this court cannot say the finding of the jury was not warranted. Waterman Lumber Co. v. Shaw (Tex. Civ. App.) 165 S. W. 127.

[2] There was evidence that, besides freight trains, appellant regularly operated four passenger trains a day over the crossing, and that a great many people traveled the road over same. The witness Shaddix said there was "a continuous passing of the crossing," and the witness Hess testified that people were "passing that road continually in the daytime." There was evidence that because of the Fertilizer building referred to in the statement above, and other buildings north of same, employees of appellant in charge of trains approaching the crossing from the north could not see persons on the road approaching same from the west until such persons got within 40 or 50 feet of the crossing, and that such persons could not see trains approaching the crossing from the north until they got within a like distance of the crossing. There was evidence that appellant had made no provision at the crossing for warning persons traveling the road when a train was approaching same, and that on the occasion in question the whistle of the locomotive was not blown nor the bell thereof rung as the train approached the crossing. And there was evidence the jury had a right to believe that the train, at the time of the accident, was "drifting" or coasting down grade at the rate of 25 or 30 miles an hour. With the circumstances stated in evidence before them, we think the jury had a right to say that those in charge of the train were guilty of negligence in operating it at that rate of speed. Smith v. Railway Co. (Tex. Com. App.) 277 S. W. 103.

[3, 4] Whether the evidence warranted the finding involved in the verdict that appellant was guilty of negligence in failing to have "a flagman, watchman, gates, bell, or gong" at the crossing to warn travelers on the road of the approach of the train depended on whether the crossing was an "unusually dangerous" one or not; for the law is clear, if the crossing was an ordinary one (that is, not unusually hazardous), appellant owed no duty to provide means for giving such warning. Tisdale v. Railway Co. (Tex. Sup.) 228 S. W. 133, and cases cited in a note thereto in 16 A. L. R. 1273. We think the inference the jury had a right to draw from the testimony that on the occasion of the accident the train was operated at the rate of 25 or 30 miles an hour over the crossing, and the testimony (hereinbefore referred to) showing that people were continually passing over the crossing and that those traveling from the west could not see an approaching train until they were within 40 or 50 feet of the crossing, and that operatives of trains from the north could not see those so traveling until they passed along the road east of the Fertilizer building was

sufficient to support a finding that the crossing was an unusually dangerous one, and that appellant therefore was guilty of negligence in failing to provide means for warning travelers approaching the crossing from the west.

In its answer appellant alleged that the automobile in which appellee was riding was without brakes, or, if it was equipped with brakes, same were not sufficient to control it, and charged that appellee was guilty of contributory negligence in riding there "without taking any measures (quoting) for his own safety, which he might have taken." In said answer appellant alleged further that, by the exercise of proper care, appellee could have discovered that the train was approaching. the crossing in time to have caused the driver of the automobile "to stop, slow up, or turn (quoting) in such way as to have avoided any collision, or threatened collision, or could in some way have saved himself from injury, if, in fact, he was in any way injured." Because of said allegations and testimony which he thought tended to support same, the trial court instructed the jury (in effect) to find for appellant if they believed the automobile was not equipped with brakes or was equipped with insufficient brakes, and further believed appellee knew or should have known the fact and in riding as he did in same was guilty of negligence which caused or contributed to cause the collision; and then instructed them further to find for appellant, if they believed—

"that at the time the automobile in which plaintiff was riding approached the railroad crossing, as aforesaid, the plaintiff could, by looking or listening, have seen or heard said train in time to get out of said automobile and save himself injury and failed to do so, and that said failure in either respect, if any, on the part of plaintiff was negligence, as that term is hereinbefore defined to you, which caused or contributed to cause plaintiff's injury."

Appellant objected to the instruction set out above, on the ground that same did not present the theory of contributory negligence pleaded by it, and complains here because the court overruled its objection and because the court, having overruled the objection, refused to give to the jury a special charge it requested, as follows:

"If you believe from the evidence that the plaintiff, by the exercise of that degree of care which a person of ordinary care would have exercised under the same or similar circumstances, could have discovered the approach of the train with which the automobile in which he was riding collided either by looking or listening and could have made such discovery in time to have avoided the collision complained of, or if you believe from the evidence that the plaintiff, by the exercise of such care as a person of ordinary care would have exercised under the same or similar circumstances in approaching such railway crossing, and could have by such care caused the driver of said

automobile to stop, slow up, or turn in such way as to have avoided any collision, and you further believe from the evidence that the plaintiff in either respect failed to exercise such care, and in that in either respect by such failure caused or contributed to cause the injury, if any, he sustained, then, in either event, you will find for the defendant.

"And in this connection you are further instructed that if you believe from the evidence that the plaintiff, in either respect as hereinabove submitted, by failure to exercise such care as a person of ordinary care would have exercised under the same or similar circumstances, either caused or contributed to cause the injury he sustained, if, in fact, he sustained any injury, you will return a verdict for the defendant, even though you should further believe that the collision would not have occurred but for some negligence, in either respect as submitted in the court's charge, on the part of the defendant."

[5, 6] The difference between the instructions the court gave the jury and those requested by appellant, which he refused to give, lay in the fact that the latter, if given, would have told the jury to find appellee was guilty of contributory negligence if, by the exercise of ordinary care, he could have caused the driver of the automobile "to stop, slow up, or turn in such way as to have avoided any collision." We think the contention should be overruled, because, if it was error to refuse the requested charge, we think the error should be treated as harmless, within rule 62a for the government of Courts of Civil Appeals. The testimony was that appellee did not discover the approaching train until it was within 40 or 50 feet of the crossing, and that at once when he discovered it he exclaimed, "Lord, have mercy!" and jumped from the automobile. Unless the jury ignored the instructions the court gave them (and it should not be assumed they did), they could not have acquitted appellee of contributory negligence in the way submitted to them unless they found he was not at fault in failing to discover the train sooner than he did. They could not have found that and consistently have found he was guilty of negligence in not causing the driver of the automobile to stop, slow up, or turn same in such a way as to have avoided the collision. The record suggests no other way in which appellee could have caused the driver to stop, slow up, or turn the automobile in such a way as to have avoided the collision than by warning him the train was approaching, and the evidence was undisputed that appellee gave such warning at once when he discovered the train.

[7, 8] The contention that the jury was guilty of misconduct which entitled appellant to a new trial is overruled. The misconduct charged was that the jury, in considering what their verdict should be, discussed and were influenced by a statement one of them made that appellant had offered to pay appellee $5,000 on account of his claim

against it for damages. That such a statement was made in the jury room was not disputed in the evidence heard on the motion for a new trial, but the testimony as to when it was made was conflicting. Several of the jurymen testified it was made while they were considering the amount of their verdict, but the juror H. D. King testified that at the time it was made all the jurymen except one had agreed that the verdict should be in appellee's favor for $8,500. The excepted juror, King said, thought the verdict should be for $10,000. The trial court had a right to believe King's testimony, according to which no injury resulted to appellant because of the misconduct complained of.

[9] There was testimony the jury had a right to believe showing that besides lesser injuries to appellee caused by the accident, a bone in his right leg was broken, resulting in a permanent shortening of that leg from 1 to 1½ inches. In view of that testimony, we cannot say the verdict and judgment were for an excessive amount as claimed by appellant.

[10] The contention remaining undisposed of is that the trial court erred when he refused to grant appellant a new trial on the ground of "newly discovered evidence." The evidence referred to was that of one Strube, who, it appears from his unsworn statement in the record sent to this court, lived "something like 300 yards" from appellee's home. According to Strube's statement his testimony would tend to show that appellee was in bad physical condition before the accident occurred, and was not injured as seriously as he claimed to be by reason of the collision. It seems to us if appellant did not believe appellee was injured as seriously as he claimed to be, due diligence on its part to ascertain the truth of the matter would have required it to make inquiry of his near neighbors. If it had made such inquiry of Strube, there is no reason to doubt from anything in the record it would have ascertained before the trial all it learned afterward from him. On the showing made we think the trial court did not abuse the discretion he had in the matter when he overruled the motion on the ground specified. Power Co. v. Hooper, 46 Tex. Civ. App. 257, 102 S. W. 133; Railway Co. v. Carter (Tex. Civ. App.) 275 S. W. 224; Peters v. Williams (Tex. Civ. App.) 271 S. W. 430; Sykes v. Sykes (Tex. Civ. App.) 261 S. W. 797; Railway Co. v. Blanchard, 96 Tex. 616, 75 S. W. 6.

The judgment is affirmed.

### On Motion of Appellant for a Rehearing.

The contention in the motion, that this court erred in holding, in effect, that the jury had a right to consider the speed of the train in determining whether appellant was guilty of negligence or not in failing to have a flagman, gate, or gong at the crossing to warn travelers on the public road of the approach of a train, is sustained. But we think the other matters referred to as relevant to that issue authorized its submission to the jury. The contention that it appeared from other testimony of the witness Shaddix that, when he said there was "a continuous passing of the crossing," he did not mean the flow of trafic was never broken, and from other testimony of the witness Hess that he did not mean that when he said people were "passing that road continually in the daytime," also is sustained. But we think the jury had a right to say that the testimony of those witnesses as to the use made of the crossing, construed as a whole and in connection with testimony as to the position of the Fertilizer building, showed the crossing to be an unusually dangerous one.

The motion is overruled.