**GALVESTON, H. & S. A. RY. CO. v. McCROREY et al. (No. 8057.)**

Court of Civil Appeals of Texas. San Antonio. Oct. 31, 1928.

Rehearing Denied Nov. 28, 1928.

Miller & Hopkins, of Gonzales, and Baker, Botts, Parker & Garwood, of Houston, for appellant.

Midkiff & Green, of Gonzales, and Allen Hitzfeld, of San Antonio, for appellees.

COBBS, J. Appellee sued the Galveston, Harrisburg & San Antonio Railway Company to recover damages for injuries resulting from a collision between an automobile driven by appellee and appellant's passenger train, at a public road crossing.

The Maryland Casualty Company intervened in the cause alleging it had in force

and effect its policy of insurance issued under the terms and requirements of the Employers' Liability Act of the State of Texas (Rev. St. 1925, arts. 8306–8309) to the Pierce Petroleum Company, a corporation employing more than three employés, and at the time of the injuries appellee was in its employment, and that intervener was subrogated to plaintiff's claim against defendant, to the extent of $1,020, being compensation theretofore paid, at the rate of $20 per week for a period of 51 weeks, and the additional sum of $76.50 paid to doctors. So, intervener prayed judgment against defendant for the sum of $1,096.

The case was tried with a jury, who made a special finding that the intervener was alleged to and did pay appellee $1,020 for compensation benefits under the Employers' Liability Laws of Texas and $76.50 additional for medical services rendered him, and judgment was rendered for appellee McCrorey in the sum of $9,403.50 and for intervener in the sum of $1,096.50, to all of which appellant excepted and appealed to this court.

Appellant makes 22 assignments of error, all of which we have fully considered and passed upon, but will not discuss separately, as it is not necessary, but will discuss the material ones, which involve a consideration of all the assignments, points, and propositions. We overrule the objections to our considering appellant's propositions and assignments of error.

We think we may be able to simplify this record, though voluminous indeed, with a transcript of 224 pages, a statement of facts of 289 pages; brief of appellant containing 143 printed pages, and brief of appellees containing 15 pages of manuscript.

The gravamen of this case is pleaded in plaintiff's petition as follows:

"That in constructing its line of railway about two miles east of the town of Waelder, said line was and is so constructed and maintained by defendant that it runs through a deep and narrow cut with high embankments on either side thereof, and trains coming from the east and going in a westerly direction run through said cut for a distance of about 300 yards to a point where the Moulton and Waelder public road crosses said line of railway at the west end of said cut above described. * * * That at the time of the collision hereinafter detailed, the defendant had negligently and carelessly permitted the dump or embankment on its right of way on the south side of its railway track and along the cut above described, to be and remain so high as to obstruct from the view of persons traveling on said public road south of said track, trains coming from the east and approaching said crossing through said cut. Said defendant had also negligently and carelessly permitted weeds and grass to grow, accumulate and remain on its right of way near its track and on the dump or embankment on the south side thereof, as to further obscure the view of said cut from persons traveling on said public road near said crossing; said dump or embankment being so negligently and carelessly constructed and maintained by defendant, and said weeds and grass being so negligently and carelessly permitted by defendant to grow, accumulate and remain so high on said right of way, that persons travelling said public road south of said track, coming from the direction of Moulton and going in the direction of Waelder, could not see trains on said line of railway passing from east to west through said cut."

On account of the deep embankment and the growing grass and weeds thereupon, the appellee could not see the approaching train. Before crossing he looked for but saw no approaching train. He testified:

"When I was twenty or thirty feet from the track I slowed my car down as I told you; I will tell you how I come to call that to memory —I don't know, but I would estimate about twenty or thirty feet from the track I slowed my car down so slow that I had to start in low, I did not come to an absolute halt, but I thought my engine was going to die and I had to start my car in low, and that occurred when I was twenty or thirty feet from the crossing. * * * After I started my car up, of course, I looked and saw nothing or heard nothing, and I started up my car and it might have went into high, I don't know positively, but I was just rolling along, and the first thing I knew when I rolled just about the rail, the first rail, the train came out of the cut like that (snapping fingers). I did not look for a train when I was about twenty or thirty feet from the crossing; I did look to my right, in that direction when I was twenty or thirty feet from the crossing. I did not say that my motor stalled, I thought it was necessary to keep it in low, I remember that, and from that point on to the track I don't remember that I looked any further up the track; I had to notice the road, and, of course, my attention might have been on that."

All the evidence shows that the high embankment, weeds, etc., growing thereupon rendered it impossible for the appellee to see the approaching train at the time; and he did not hear its approach, or hear any whistle blown or other noises. These involved pure issues of fact that were found in favor of appellee by the jury, by which we must be bound.

The jury found by the exercise of ordinary care appellee could not have discovered the approach of the train, and could not by the exercise of ordinary care have avoided the collision, which acquitted appellee of contributory negligence, and this disposes of all issues of contributory negligence, pleaded by appellant by a failure to use ordinary care to discover the approach of the train. St. Louis Southwestern Ry. Co. v. Lewis (Tex. Civ. App.) 297 S. W. 896.

The jury was asked this question under special issue No. 3:

"(a) Do you find from the evidence that, at the time of the collision of defendant's train with the automobile of plaintiff, there were obstructions in and along defendant's right-of-way, such as to obstruct the defendant's said

train as it approached the crossing where said collision occurred from the view of travelers along the highway situated as the said plaintiff, A. W. McCrorey, was situated on said occasion?

"(b) Do you find from the evidence that the presence of said obstructions in and along said right-of-way was negligence on the part of the defendant company, as that term has hereinbefore been explained to you?

"(c) Was such negligence a proximate cause of plaintiff's injury?"

The jury answered subdivision (a) of this question in the affirmative, and then under subdivisions (b) and (c) of that question answered that the presence of said obstructions was negligence on the part of the defendant, and that such negligence was a proximate cause of the plaintiff's injury.

It is too well settled now to urge that the presence of obstructions on a railroad track or right of way is negligence per se. The presence of such, whether necessary to the railroad's business or otherwise, is a jury question on the theory of negligence. Baker v. Hodges (Tex. Civ. App.) 231 S. W. 847; Receivers Houston & T. C. Ry. Co. v. Stewart, 17 S. W. 33. We held in Galveston, H. & S. A. Ry. Co. v. Michalke, 14 Tex. Civ. App. 495, 37 S. W. 480, obstruction raising a question of per se negligence involved a question of fact to be left to "the jury to say whether or not it was [negligence] under the circumstances in evidence before them."

Whether or not the embankment left standing with growing grass, which obstructed the view of appellee and kept him from seeing the suddenly appearing train, contributed to the injury of appellee, was a question for the jury. Missouri, K. & T. R. Co. v. King (Tex. Civ. App.) 123 S. W. 151. The embankment and grass growing thereupon did not constitute an independent ground of negligence. Hines v. Smith (Tex. Civ. App.) 235 S. W. 654. The negligence, if any, of appellant in permitting the embankment and growing weeds which obstructed the view of any one approaching the crossing, was actionable negligence, but as to whether it contributed to the injuries of appellee was a jury question. St. Louis, S. F. & T. R. v. Allen (Tex. Civ. App.) 296 S. W. 950.

The special issues submitted by the court to the jury covered all issues of contributory negligence pleaded by appellant on the question of appellee's alleged failure to use ordinary care to discover the approaching train and to avoid the damages and injury.

The jury found that by the exercise of ordinary care appellee could not have discovered the approach of the train, and could not by the exercise of ordinary care have avoided the collision. This finding acquitted appellee of contributory negligence in the matter.

There is no law that requires a railroad company to keep its right of way free from obstructions, and a failure so to do cannot be declared as a matter of law to be negligence. It was a question of fact to be submitted to and found by the jury. Neither is there any law that requires a person, in crossing a railway track, to stop, look, and listen for an approaching train. As to any contributory negligence whatever on the part of the appellee in crossing the railway track is peculiarly a jury question.

We think the issues submitted to and found by the jury were proper and not objectionable. We do not think the special issues submitted by the appellant added anything that was not practically covered by the court's charge. This case does not present any peculiar difficulties different from those of any other ordinary crossing case.

We think the case was fairly tried, and any errors alleged to have been committed are unimportant and without merit. Having duly considered all the assignments and points of error alleged to have been committed, we find no merit in any of them, and they are each overruled.

The judgment is affirmed.