ALLEN v. WILLIAMS et al.  (No. 2206.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 21, 1920. Rehearing Denied Feb. 5, 1920.)

1. ACKNOWLEDGMENT ⬥41 — ACKNOWLEDG-MENT UNNECESSARY IN TRANSFER OF PROP-ERTY.

In partition suit of property conveyed to plaintiff by a divorced woman, but claimed by her to be conveyed to plaintiff merely as trustee to recover possession from her former husband, but alleged by plaintiff to constitute an absolute conveyance, whether the certificate of acknowledgment was valid was immaterial, since, if title otherwise passed, failure of acknowledgment would not render it inoperative.

2. TRUSTS ⬥44(1)—TESTIMONY OF ONE WIT-NESS IS SUFFICIENT TO ESTABLISH PAROL TRUST.

A parol trust may be ingrafted on a deed absolute on its face by the testimony of one witness, without proof of corroborating circumstances.

3. APPEAL AND ERROR ⬥733—ASSIGNMENT THAT JUDGMENT IS NOT SUPPORTED BY EVI-DENCE TOO GENERAL.

An assignment of error in a partition suit that "the judgment is wholly unsupported by the evidence" is insufficient as too general.

4. APPEAL ·AND ERROR ⬥733—ASSIGNMENT THAT COURT ERRED IN RENDERING JUDGMENT IN PARTITION WHICH DIVESTED PLAINTIFF OF THE TITLE TOO GENERAL.

An assignment of error in a partition suit that "the court erred in rendering judgment which divested the plaintiff of the title to the land in controversy" is insufficient as being too general.

Appeal from District Court, Gregg County; Chas. L. Brachfield, Judge.

Action by M. L. Allen against John Williams and others in partition. Judgment for defendants, and plaintiff appeals. Affirmed.

The community estate between John Williams and his wife, Lula Williams, at the time they were divorced (to wit, December 6, 1915) consisted of certain personal property and three tracts of land—one containing 60.6 acres; another 61.5 acres. In his decree

divorcing the parties the court awarded the custody of their seven minor children to ·John Williams and set apart for use by him in maintaining them said tract of 60.6 acres. By a power of attorney executed January 17, 1917, Lula Williams authorized M. L. Allen to act for her in securing possession of the interest she owned in personal property belonging to the community estate between her and John Williams. By an instrument purporting to be a deed executed on said January 17, 1917, said Lula Williams,· "in consideration," it was recited therein, "of the sum of one dollar and other valuable considerations to her in hand paid," sold and conveyed to said M. L. Allen the undivided interest she owned in said .three tracts of land. This was a suit by said Allen against said John Williams to partition the tracts of 1 acre and 61.5 acres, and to establish his claim of title to an interest in the tract of 60.6 acres. Lula Williams, having undertaken by an instrument executed by . her February 6, 1919, to revoke the deed she had made to Allen, on the ground that it was without a consideration and was executed by her "with the distinct understanding," quoting from the instrument, "that said deed was only to operate as a power of attorney in order that the said M. L. Allen might bring suit in his own name and recover for me my interest in said property," and having on the same day executed a deed with covenants of general warranty conveying the interest she claimed she still owned in the tracts of 1 acre and 61.5 acres to John Williams, intervened in the suit, alleging that the deed she made to Allen was without a consideration and was intended to operate only as a power of attorney, and praying that it be canceled and that the title to the 1-acre tract and the 61.5-acre tract be decreed to be in John Williams, and the title to the 60.6 acres in her and John Williams, but to the use of the latter while any of their children remained minors. The appeal is by Allen from a judgment in conformity to said prayer. It seems that John Williams and Lula Williams were negroes, and it appeared from the testimony at the trial that Lula could neither read nor write. Allen testified as a witness on his own behalf. His account of the transaction between Lula and himself was as follows:

"I am the plaintiff in this case. I know the land described in the deed of conveyance from Lula Williams to me. I have not conveyed it to any one. As to the consideration named in the deed, when I bought this place Lula Williams wanted me to file suit and get this land, and I told her that I couldn't pay much for it, and she said, 'I will give it to you if you will take it away from him;' and so I told her that would be the only way I would handle it that it would take four or five years, and that it would cost $1,000 to get it; and I told her

that I would give her $1, and she said, 'Give me $1 and I will make you a straight deed to it;' and I was to handle the other stuff on the halves, but I wouldn't handle the land until I had the interest to it. I bought it straight out. I had a contract with her about the personal property. She wanted me to get her something to eat; she had no furniture or anything, and she wanted me to collect part of it out of John. So I went up there and found out what John had, and I came back and had Mr. Jones to examine the records and found out what he had, and I told her that I would collect it on the halves, the personal property. She agreed to that, and I went to work and spent money, paid out money, and she revoked the power of attorney, took it away from me. * * * I paid Lula the dollar; I did not pay it for the acknowledgment, I paid it to her; I did not hand that dollar to Mr. Mayfield; I asked her what she expected to get out of the land, and she said, 'I expect to get a dollar,' and I says, 'Here is your dollar,' and that was all she expected. I paid Lula the dollar, and I paid Dr. Mayfield for taking the acknowledgment. The whole property is worth something like $5,000, but it wasn't worth that much at the time I bought her interest; it was worth $1,500 then; it was worth $2,500. I think I offered John $1,500 for his interest at that time. I did not say that the whole place was worth $10 to $20 per acre rental; I said that 50 acres of it that is in cultivation is worth $10 an acre a year rent, and that one of the places was worth from $10 to $20 an acre a year. The first year it wasn't worth anything. I told Mr. Martin a while ago that it was worth $5, and it is worth more. The rent was worth $500 a year outside of the part the court decreed to him, 66 acres. The other 66 acres is worth $500 a year rent. * * * One dollar is all the money I paid Lula, but I have been out a considerable amount of money besides that in the way of lawyer's fees and expenses of suit; that is all I been out. If I had collected the cattle, I would have received half; the land I got straight out."

F. B. Martin, W. E. Jones, and Riley Strickland, all of Longview, for appellant.

McCord & Campbell, of Longview, for appellees.

WILLSON, C. J. (after stating the facts as above). Special issues were submitted to the jury. Their findings that the instrument purporting to be a deed conveying the land in controversy to appellant, Allen, the execution of which, it appeared from the certificate of the officer attached thereto, was duly acknowledged by Lula Williams, was without a consideration, and was intended by her to operate as a power of attorney only, are attacked in the first assignment as unwarranted by the testimony. The contentions under the assignment are: (1) That the findings were not supported by any testimony other than that of said Lula Williams; and (2) that the rule of law is that, quoting from the brief, "the uncorroborated evidence of the grantor alone is not sufficient to overcome a certificate of acknowledgment regular on its face."

[1, 2] It might be conceded that the contention as to the testimony should be sustained, and it might also be conceded that the validity of the officer's certificate showing Lula Williams to have duly acknowledged the execution of the deed to Allen could not be impeached by the testimony of said Lula Williams alone; yet it would not follow that the judgment should be reversed; for the right of John Williams and Lula Williams to the relief granted to them by the judgment was not predicated on the invalidity of the certificate of acknowledgment attached to her deed to Allen, but on the fact that, if the title in Lula Williams to an interest in the land passed to Allen at all, it passed to him as a trustee for said Lula Williams. An issue as to the validity of the certificate of acknowledgment was not made by either the pleading or the evidence in the case; and on the issue as to whether the effect of the deed was to divest Lula Williams of the title she had to an interest in the land it was of no importance whether said certificate was valid or not; for it was not necessary to the validity of the deed that Lula Williams should have acknowledged before an officer that she executed it. Therefore if it otherwise would have operated to divest her of title, the fact that, having signed the deed, she did not go before an officer and acknowledge she had done so, would not render it inoperative as a conveyance. McLane v. Canales, 25 S. W. 29. While it is held in many other states, and formerly was held in this state, that the testimony of one witness without proof of corroborating circumstances was not sufficient to ingraft a parol trust on a deed absolute on its face, we think it is true to say that the rule now recognized in this state is to the contrary. Mortgage Co. v. Pace, 23 Tex. Civ. App. 222, 56 S. W. 377, 393; Keller v. Keller, 141 S. W. 581; Witfield v. Diffie, 105 S. W. 324; Ellerd v. Ellison, 165 S. W. 876; Hall v. Hall, 198 S. W. 636. In the case first cited the court, discussing the "two witness rule" as applied to trusts, said:

"Such a rule, we think, has no foundation in principle; for, if the evidence is of such a character, whether it comes from one or many witnesses, as to satisfy the conscience of the court that its equitable relief should be administered, no hesitancy should be felt in applying the principles that would govern the particular case. It would be a singular proposition to announce that the law more sacredly guards and protects the property of the citizen than it does his life or liberty; yet an admission of the insistence of appellant would necessarily lead to the conclusion that life or liberty could be lost on less evidence than would be required to deprive him of an apparent right in property."

(218 S.W.)

[3, 4] Of the remaining assignments the second, to wit, that "the judgment is wholly unsupported by the evidence," and the fourth, to wit, that "the court erred in rendering judgment which divested the plaintiff of the title to the land in controversy," have not been considered because too general (Matheson v. Live Stock Co., 198 S. W. 641; Foster v. Atlir, 181 S. W. 520; Modern Woodmen v. Yanowsky, 187 S. W. 728); and we think the third does not show error which should operate to reverse the judgment.

The judgment is affirmed.