## WOOD et ux. v. DE WINTER et al.
### (No. 11367.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 23, 1926.)

**1. Mortgages ⬳32(3).**

A conveyance absolute on its face, but intended as security for a debt, will be regarded in equity as a mortgage.

**2. Mortgages ⬳37(1)—Evidence of value of property at time of making deed is material on issue whether an absolute conveyance or mortgage was made.**

On issue of whether deed was made as an absolute conveyance of property or simply as security for a debt in nature of a mortgage, evidence of value of property at time deed was made is pertinent and material.

**3. Mortgages ⬳6.**

Retention of possession by vendor is a circumstance indicating a mortgage and not a conditional sale.

**4. Mortgages ⬳38(2)—Proof necessary to sustain contention that conveyance was intended as a mortgage should be such as to satisfy conscience of court.**

On issue whether a deed was intended as a mortgage or as an absolute conveyance, proof showing it to be a mortgage should be such as to satisfy conscience of court that deed was intended as security only.

**5. Jury ⬳14(4).**

In action of trespass to try title defendants are entitled to jury trial on issue whether their deed was intended as an absolute conveyance or as a mortgage.

**6. Mortgages ⬳38(1)—Verdict that defendants' deed was intended as mortgage not unsupported by evidence as matter of law.**

Evidence held to be such that Court of Civil Appeals could not say that verdict holding defendants' deed to have been intended as a mortgage was without sufficient support as a matter of law, especially in view of retention of possession by defendants.

**7. Homestead ⬳115(1).**

Deed of defendants' homestead, if intended at time of its execution as a mortgage or as security for a loan, is void.

**8. Homestead ⬳124—Instrument conveying defendants' homestead, if a mortgage when executed, remained a mortgage and was void, though mortgagors have been divorced.**

If instrument executed by husband and wife conveying their homestead was a mortgage at time it was written, it remained a mortgage and was void though they later were divorced, since nature of transaction is determined by circumstances and intention of parties at time of execution of instrument.

**9. Homestead ⬳115(1)—Loss suffered by judgment declaring deed a mortgage on homestead and void is one of penalties assessed against lenders of moneys on homesteads taking warranty deeds.**

Loss suffered by grantee by judgment declaring deed to be a mortgage of homestead and void is one of penalties equity and state Constitution assess against lenders of moneys on homesteads who disguise true nature of transaction by taking a warranty deed.

Appeal from District Court, Wichita County.

Action by Frank Wood and wife against Kathryn De Winter and others, in which defendants filed a cross-action. Judgment for defendants, and plaintiffs appeal. Affirmed.

Raymond M. Myers, of Wichita Falls, for appellants.

Harris & Martin, of Wichita Falls, for appellees.

BUCK, J. Frank and Alta Wood, husband and wife, sued Kathryn L. De Winter and her husband, J. H. De Winter, also Harvey Harris and Thelbert Martin, in form of trespass to try title to a certain lot, with improvements, in the city of Wichita Falls. Plaintiffs alleged that on March 15, 1921, the defendants Kathryn L. De Winter and J. H. De Winter conveyed by a general warranty deed to Henry Hobbs the property in controversy, and on June 27, 1924, said Hobbs conveyed the property to plaintiffs. The petition contained the usual allegations of trespass to try title, and alleged the annual rental value of the land and premises to be $300. They further alleged: That on March 5, 1921, Henry Hobbs and the defendant J. H. De Winter entered into a rental contract, in which the said De Winter, after acknowledging in Henry Hobbs the ownership of the above-described property and premises, agreed to pay as rental for the same the sum of $25 per month for a period of one year, on which the sum of $175 had been paid and credited, but no further sums have been paid on same. That on or about January 1, 1922, defendant J. H. De Winter left Wichita Falls, since which time defendant Kathryn De Winter has lived in said house and on said premises and occupied the same at the time of the suit. That at the time J. H. De Winter left Wichita Falls defendant Kathryn De Winter asked Henry Hobbs if she might remain in said house, and it was then mutually agreed between them that she could lease said property for the sum of $25 per month.

Defendants Kathryn De Winter and Harris and Martin answered by a general demurrer and a general denial, and on behalf of Kathryn L. De Winter answered: That the

―――――

purported deed from the De Winters to Hobbs had in fact been a mortgage to secure a loan of $3,000, and that Hobbs had told Mrs. De Winter that her husband desired to borrow the money from him, and that he was willing to loan to her husband the money on defendants' home, and that the notary did not explain to her that the instrument was intended and purported to be a conveyance of the title. That the property at the time of the execution of this instrument was of the value of $5,500 or $6,000, and that the reasonable market value of said property was $6,000 at the time of said purported deed, and that the reasonable rental value of said property at said time was $85 per month. It was further alleged that plaintiffs Frank and Alta Wood were not purchasers in good faith and without notice of defendant's right to said property, and that if a conveyance had been executed by the said Henry Hobbs attempting to convey the said property to the plaintiffs that same is void, because plaintiffs at the time of said last conveyance had actual and constructive notice and knew that said defendant was occupying and claiming said property as her homestead, and that same was her homestead on March 5, 1921.

Mrs. De Winter further pleaded that she had never agreed to pay Henry Hobbs or any one else rent on said property, that all of the furniture and belongings located in said house were the household furnishings belonging to herself and used by herself and family and exempt under the laws of the state of Texas, and that a landlord's lien did not attach to said property.

Defendants Harvey Harris and Thelbert Martin pleaded that they had never been in possession of said property described in plaintiffs' petition, and that their only interest therein was by power of attorney executed by Mrs. De Winter on February 21, 1923, wherein in consideration of legal services the said Mrs. De Winter conveyed to them a one-third undivided interest in said land and premises.

Wherefore, defendants prayed that plaintiffs take nothing by their suit, that an order be entered canceling the purported deed of March 5, 1921, and that the cloud cast by said instrument be removed from the title of said property, and for costs of suit and for other and further relief, both special and general, in law and in equity.

Plaintiffs filed an answer to defendants' cross-action and denied generally the allegations contained in said cross-answer. Defendant J. H. De Winter, by Wayne Somerville, an attorney appointed by the court to represent him, filed a general answer, consisting of a general demurrer, a general denial, and a plea of not guilty. The cause was tried before a jury on one special issue, to wit:

"Was it the intention of all parties, Mr. and Mrs. De Winter and Mr. Hobbs, to the deed from Mr. and Mrs. De Winter to Henry Hobbs, that the same was being executed as security for $3,000 that Mr. Hobbs delivered to the defendants?"

The jury answered, "Yes." Judgment was entered upon this verdict that Frank and Alta Wood take nothing against any of the parties defendant, and adjudging and decreeing that the deed of March 5, 1921, be canceled and the cloud cast by said instrument on said title be removed. From this judgment the plaintiffs have appealed.

The appellants have several assignments of error, such as the verdict is against the overwhelming weight of the evidence, that it is contrary to the evidence, that the evidence is not sufficiently clear and certain to sustain the verdict, that the evidence is too doubtful and unsatisfactory to sustain the verdict, etc.

Henry Hobbs testified: That he bought the property in controversy from J. H. De Winter on March 5, 1921. That De Winter wanted something like $5,000 or $6,000 in the beginning of the negotiations, but that Hobbs told him he would give him $3,000 cash for it. That finally De Winter accepted the offer. That S. A. L. Morgan, an attorney, examined the abstract and wrote the deed. That Mr. Morgan told him that a rental contract should be drawn up and signed by the parties, and that when the question of the amount of rent came up he told Mr. Morgan that, inasmuch as De Winter had two orphan nieces to support, that he, Hobbs, would reduce the rent to $25 per month. That when Mr. De Winter began to talk about getting the money he wanted Hobbs to make a loan on the property, but that the witness, after talking with his attorney, who told him that he would not be protected by a mortgage on a homestead, reported this information back to De Winter. That some time about a year or more after the execution of the deed Mr. and Mrs. De Winter called him over to the house one night and informed him that they had decided each to go his or her own way, and that Mrs. De Winter wanted to know if he would let her and the children stay in the house, and that the witness told her that he would do so as long as she paid the rent. That she has paid no rent since that time, and that he had paid the taxes since 1921. That he did not have any conversation with Mrs. De Winter about the trade with her husband. That he was present in the office when the deed was executed. That Mr. Morgan explained the purport of the deed to Mrs. De Winter, and told him that they were absolutely selling the property. That he did not tell Mrs. De Winter or her husband that the $300 a year was to cover the interest on the money. That he did not tell her that she could go ahead and sign the papers for her husband and he could get the loan and go into business, and that he would pay it back in one year's time. That he did not tell her

this, because he did not know whether her husband would ever pay the money back or not. That along about June 24, 1924, he gave her notice to vacate.

Mr. J. W. Talbert testified: That he was engaged in the building and loan association business in Wichita Falls, and that he had been engaged in the real estate and building and loan business for 11 years. That he was acquainted with the reasonable market value of the property in controversy in March, 1921. That he understood that the De Winters paid $5,500 for the property in 1919, and that he thought the property was well worth that amount at that time. That in 1921 property values in Wichita Falls had been lowered somewhat, and that he thought from $4,750 to $5,000 was a reasonable value for the property. That the lot was in a good location, was an east front, and that it was close to the city park, etc.

Homer Karrenbrock testified for the defendant: That in his opinion, in March, 1921, the reasonable market value of the property was $4,700. That in 1919, in his judgment, the property could have been sold for $5,500 or $5,750. That in his opinion, in March, 1921, the reasonable monthly rental value of the property was $50 to $55.

Mr. H. G. Helgerson testified: That he had been in the real estate business in Wichita Falls for six years, and that in his opinion the reasonable market value of the property in controversy, in March, 1921, was around $5,000. That the reasonable monthly rental value of said property was $75. That some months prior to the trial Mrs. De Winter asked him to come up and look at the property and see what it could be sold for. That he asked her what she was willing to take for it, and she replied that there was a loan of $3,000 on it. That he asked her when it became due, and she told him that it was due then. That he asked her if the parties were willing to carry it, and she explained the circumstances and the status of the loan. That he told her that if it was in that kind of shape he did not want to work on it. That in his investigation he examined the deed records and found that the instrument signed by De Winter and wife was a deed. That Mrs. De Winter did not know this before he told her.

Mr. N. M. Clifford testified: That he was the cashier of the Security National Bank and knew Mrs. De Winter. He testified that in his opinion the reasonable market value of the property in controversy in 1921 was somewhere in the neighborhood of $3,000. That he had bought several pieces of property in that part of town during 1922.

S. A. L. Morgan testified: That he was the attorney who wrote the deed from the De Winters to Hobbs. That he remembered, when De Winter and Hobbs came to his office and explained that they wanted him to write a deed conveying the property, that he told

Mr. Hobbs that it was dangerous to buy a man's homestead and leave him in possession of it. That he explained that it might be claimed that the instrument was intended as a mortgage and not a bona fide conveyance. That Mr. De Winter then stated to him that he was at that time in some sort of a business and had to have some money, and that he had sold Mr. Hobbs his home for the purpose of getting the money to put in the business. That he did not have any right to borrow the money on the homestead. The witness further testified: That he fixed up the papers and examined the title, and that he told Mrs. De Winter:

"Now, Mrs. De Winter, you understand this is a sale of your home up there, and, while your husband has rented it from Mr. Hobbs, that Mr. Hobbs would have the same right to dispossess you from that house as he would any other house that you might be renting from him."

That she said that she understood it, and the deed was presented to her and her husband and they inspected it. That he excused all of the parties except Mrs. De Winter from the room, and that she acknowledged it before a notary in his office.

Mrs. Henry Hobbs testified that she and Mrs. De Winter had been good friends, and that Mrs. De Winter made the remark to her that her husband needed money to go back into business, and that they were not able to borrow money on the business, and that they were compelled to sell their home.

Mrs. De Winter testified at length. She testified: That she was married in October, 1916, in Chicago, and moved to Wichita Falls in 1917. That they bought the place at 906 Kemp Boulevard in February, 1919. That Mr. De Winter did not have the money when he came to Wichita Falls, and she worked down in the produce house with him and helped to save the money with which they bought the property. That he was connected with the White Produce Company at first as a partner. That Mr. De Winter left Wichita Falls on April 5, 1922, and she had not seen or heard of him since that time. That they were at the time of the trial divorced. That she was in the office of Mr. Morgan at the time of the execution of the instrument involved. That before Mr. Morgan came in she told Mr. De Winter that she did not understand a thing about what he was doing, and he said: "You do not need to know. All that I am doing is borrowing money on the place; I am going to pay the interest." That Mr. De Winter asked Hobbs: "Henry, how do you want this interest paid—all at once?" and Mr. Hobbs said: "Pay it like rent." At this time the instrument had not been signed. She further testified that some weeks before she had met Mr. Hobbs while she was waiting for a street car, and he asked her to ride, and he mentioned to her the matter of mortgaging her property for

$3,000, and she said: "No; I am not going to mortgage our place, because it is all that we have. I am afraid we will lose it." He said: "No; you won't lose it." He further said: "Mrs. De Winter, that is the thing for you to do, because you have got those two girl's to look after—that is the thing for you to do." That she thought it over and concluded that she ought to do it to help her husband out.

Mrs. De Winter's testimony covers some 15 pages, direct examination, cross, redirect and recross, etc., but the substance of it is that there was an agreement between her husband and Mr. Hobbs for Mr. Hobbs to loan him the money and for the De Winters to execute the instrument. She testified that she did not know that the instrument was in the form of a deed, and supposed that it was a mere mortgage. There is some significence attached by appellee to the rental charge of $300 per annum. It is contended that the rental value of the premises during 1921 and 1922 was from $50 to $75 per month; that $300 per year is 10 per cent. on the amount of the loan and evidently agreed upon between Hobbs and De Winter as an interest charge. There is a further contention that $3,000 was far below the reasonable market value of the property. Except the testimony of Mr. Clifford, who said that in his opinion the reasonable market value of the property was $3,000, the witnesses who testified on that question place the value at from $4,700 to $5,500, in March, 1921.

[1-3] A deed of conveyance of land, absolute and unconditional on its face, but intended and understood by the parties to be merely security for the payment of a debt or the performance of some other condition, will be regarded and treated in equity as a mortgage, giving to the parties the relative rights and remedies of mortgagor and mortgagee, and nothing more. See 27 Cyc. pp. 991, 1007, 1008, 1010. When the question at issue is whether a deed of land was made as an absolute conveyance of the property or simply as a security for a debt or loan, in the nature of a mortgage, evidence of the value of the property at the time the deed was made is pertinent and material. 27 Cyc. p. 1012, § 12. Gibbs v. Penny, 43 Tex. 560. As possession on the part of the grantee or mortgagee is not customary in Texas, if the property remain in possession of the vendor, it is a circumstance indicating a mortgage and not a conditional sale. Ruffier v. Womack, 30 Tex. 332; Hubby v. Harris, 3 S. W. 558, 68 Tex. 91.

[4-6] In the recent case of Bemrod v. Heinzelman, 263 S. W. 951, writ of error dismissed for want of jurisdiction, Justice Dunklin, speaking for this court, said:

"Appellant cites such cases as Calhoun v. Lumpkin, 60 Tex. 185; Moreland v. Barnhart, 44 Tex. 275; Miller v. Yturria, 69 Tex. 549, 7 S. W. 206, in support of the proposition that in order to establish that an absolute deed is in-tended as a mortgage that fact must be established with clearness and certainty. * * * In the case of Pierce v. Fort, 60 Tex. 464, the issue was whether or not a deed was intended and understood to be merely a mortgage to secure a debt, and in that case the following was said:

" 'But as to the quantity and character of the proof necessary to show that the deed was a mortgage, the court instructed the jury as follows: "I furthermore charge you that the law will not warrant you in finding the deed a mortgage, unless the fact that it was intended to be such be proven by at least two witnesses or by one witness and strong corroborating circumstances." This was error. In support of it counsel * * * refers us to the case of Moreland v. Barnhart, 44 Tex. 275. In that case, Mr. Justice Reeves (on page 283) remarks as follows: "That a deed absolute on its face may be shown by parol to be intended as a trust, has been often decided by this court. The trust must be shown with clearnesss and certainty, and in some of the cases it has been held that it must be shown by the testimony of more than one witness, unless his testimony be confirmed by corroborating circumstances." He cites a number of cases from our reports, and among them Miller v. Thatcher, 9 Tex. 482 [60 Am. Dec. 172], in which the technical rule is laid down as it was given by the judge below in the trial of the present cause. But in the later case of Gaines v. Exchange Bank, decided at Austin, 1882 (1 Tex. Law Rep. page 477), it was held that this technical rule was applicable only to cases in which it was sought to establish the trust by proving the declarations of a deceased trustee, or where the trustee was testifying to the trust in his own interest.'

"That announcement has been followed with approval in the following decisions: American Freehold Land Mtg. Co. v. Pace, 56 S. W. 377, 23 Tex. Civ. App. 222, writ of error refused; Allen v. Williams (Tex. Civ. App.) 218 S. W. 135, writ of error dismissed for want of jurisdiction; Graves v. Graves (Tex. Civ. App.) 232 S. W. 543, writ of error refused; Hall v. Hall (Tex. Civ. App.) 198 S. W. 636 (writ of error refused), and other decisions there cited.

"As we construe those decisions, the rule governing in the trial court of the issue whether or not a deed was intended as a mortgage to secure a debt owing by the grantor, and not a conveyance of title, is that the proof offered to sustain the contention that it was a mortgage should be of such a character as to satisfy the conscience of the court that the relief prayed for should be granted, and that if it meets that test it is sufficient.

"In the present suit the defendants had the right to a trial of that issue by a jury. After hearing the witnesses from the witness stand, where their manner and appearance was observed, the jury found the issue very specifically and in effect more than once in favor of the defendants, and their findings were approved by the trial judge, who likewise heard the witnesses testify. And while the testimony of the defendants was somewhat vague and indefinite in some instances, and contradictory in others, and while that part which supports the verdict was flatly controverted by other evidence of a very cogent nature offered by plaintiff, which we deem it unnecessary to here set out, we do not fee' that we can say that the verdict was with-

out sufficient support in the evidence, as a matter of law, especially in view of the further fact that after the execution of the instrument defendants continued in possession of the land and no legal steps were taken by plaintiff to oust them until this suit was filed."

See Gartman v. Brannon (Tex. Civ. App.) 270 S. W. 255; Graves v. Graves (Tex. Civ. App.) 232 S. W. 543; Allen v. Williams (Tex. Civ. App.) 218 S. W. 135.

In 19 R. C. L. p. 263, § 31, it is said:

"The authorities are unanimously agreed that the burden of proving that an absolute conveyance, unaccompanied by any written stipulation for reconveyance, was intended to operate as a mortgage rests on the party alleging that intention. Furthermore, evidence is not sufficient to establish such a conveyance to be a mere mortgage unless it is clear and unambiguous. It must be, according to various statements, clear and convincing; clear and satisfactory; plain and convincing; clear, satisfactory and conclusive; or clear, unequivocal, and convincing."

See L. R. A. 1916B, pages 15 to 610, inclusive, for a full discussion of this subject, with numerous authorities. Whatever be the description of the nature of the evidence necessary, whether satisfactory and convincing, strong and satisfactory, explicit and satisfactory, etc., we think the character of the testimony is sufficient if it convinces the court, or the court and jury, that indeed it was the intention of the parties to the contract to execute the instrument for the purpose of securing a loan, and that it was intended as a loan and not as a conveyance of title, and, in the words of Justice Dunklin in Bemrod v. Heinzelman, supra, the evidence "to sustain the contention that it was a mortgage should be of such a character as to satisfy the conscience of the court that the relief prayed for should be granted, and that if it meets that test it is sufficient."

Appellants cite such cases as Howland v. Blake, 97 U. S. 624, 24 L. Ed. 1027; Campbell v. Northwestern Implement Co., 33 S. Ct. 796, 229 U. S. 561, 57 L. Ed. 1330; Miller v. Yturria, 7 S. W. 206, 69 Tex. 549; Davis v. Brewster, 59 Tex. 93; L. R. A. 1916B, § 109. But we think the test as adopted by this court in Bemrod v. Heinzelman is, in effect, the test adopted by the courts of Texas, especially of later years. Doubtless a more liberal rule in granting this equitable relief has developed during recent years. For instance, in many states, and it was so formerly held in this state, the testimony of one witness without proof of corroborating circumstances was not sufficient to establish a parol trust on a deed absolute on its face, yet this requirement seems to have been abolished. See Allen v. Williams, supra, and authorities there cited. It appears that the trial court was satisfied that sufficient proof had been offered to establish the fact that the

instrument was given as a mortgage to secure a loan. This is apparent from his action in submitting the issue to the jury, in rendering judgment thereon for the defendants, and in overruling the motion for new trial.

[7-9] Although upon the crucial issue the plaintiffs had more witnesses than the defendant, yet we are unable to say that the judgment should be set aside for lack of clear and convincing evidence to support it. If the instrument was at the time of its execution intended by the parties thereto as a mortgage and security for a loan, it was a void instrument as such, inasmuch as the evidence is uncontradicted that at the time the property described in it was the homestead of Mr. and Mrs. De Winter. If it was given as a mortgage, or as security for an obligation, it would be construed in equity as a mortgage and as nothing else. 19 R. C. L. p. 244, § 27. Hence, if the instrument was a mortgage at the time it was written, it was a mortgage at the time of the suit and void, although in the meantime the De Winters had been divorced, and there might be some question as to the right of Mrs. De Winter to claim the property as a homestead at that time. The nature of the transaction is determined by the circumstances and the intention of the parties at the time of the execution of the instrument. Nor may we concern ourselves about the loss of his security for the $3,000 by Mr. Hobbs. Such loss is one of the penalties equity and the state Constitution assess against one who loans money on a homestead and the parties try to disguise the true nature of the transaction by one giving and the other accepting an instrument in the form of a warranty deed.

The judgment is affirmed.