

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00098-CV

_____

HOWARD ROSENSTEIN, Appellant

V.

PATRICIA CONDRON, Appellee

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV21-07-515

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Howard Rosenstein appeals from the trial court's final judgment for Appellee Patricia Condron, which ordered that title to certain real property located in Wise County had vested in Patricia. Rosenstein claimed that he had been deeded the property by Patricia's now-deceased husband, Jimmy Condron, in exchange for Rosenstein's representing Jimmy in a criminal matter in 2009. After a bench trial, the trial court found, among other things, that the deed was intended as a security instrument used to secure Jimmy's payment for those legal services rather than as a conveyance to Rosenstein. Rosenstein raises four issues on appeal: (1) the evidence was insufficient to support the trial court's finding that the deed was intended to be a security instrument, (2) the evidence was insufficient to support the attorney's-fee award, (3) the trial court erred when it concluded that Patricia's claims were not barred by the statute of limitations, and (4) the trial court erred when it concluded that Patricia had standing to bring her suit to quiet title. We will reverse the trial court's award of attorney's fees, remand on that issue only, and affirm the remainder of the trial court's judgment.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

In 2009, Jimmy hired Rosenstein to represent him in a felony sexual assault case. In the engagement contract (Contract), Jimmy agreed to pay Rosenstein a minimum $22,500 nonrefundable retainer for pretrial representation. But the

2

Contract also provided that, "[d]ue to the fact that [Jimmy did] not have money for a retainer, the fee for such representation and retainer [was] agreed to consist of a transfer of [Jimmy's] property," described as 4.5 acres in Wise County (Property).[1]

The Contract continued:

> By virtue of this contract for legal services and property transfer, client hereby (Jimmy Condron) conveys to Howard Rosenstein all of his interest in the [Property] for consideration of attorney representation as of 8/25/09 on Jimmy Condron's sexual assault case.
>
> . . . .
>
> [Jimmy] acknowledges he has carefully read this agreement and property transfer and fully agrees to abide by it and fully agrees to sign any additional documents to effectuate the transfer. [Jimmy] agrees to let attorney sign client's name to any document to effectuate the transfer of the [Property]. For the pendency of the case, [Rosenstein] agrees to let [Jimmy] continue to live in his mobile home and pay on the [P]roperty the monthly mortgage.

The Contract further provided that "this representation and agreement for cash and/or property" did not include any expenses (*e.g.* for travel, court costs, experts) or any trial or posttrial representation. Jimmy would be responsible for paying such expenses as they were incurred and for paying an additional $30,000 for Rosenstein to represent him at a trial.

Jimmy's felony case was dismissed on September 21, 2009, four weeks after he hired Rosenstein, though Rosenstein did not inform Jimmy that the case had been

---

[1]Jimmy had bought the Property in 2003 for $60,000 using a loan serviced at all relevant times by Wells Fargo.

dismissed until October 2. On September 30, 2009, Jimmy signed a special warranty deed granting the Property to Rosenstein (Deed). That same day, Jimmy (as lessee) and Rosenstein (as lessor) also entered into a five-year lease agreement for the Property (Lease). The Lease automatically renewed each year for a new one-year term if not terminated by either party. Jimmy agreed to pay Rosenstein $643.63 per month, which could be adjusted "from time-to-time to ensure that the rent payable by [Jimmy was] sufficient to fully service the loan owed" by Jimmy on the Property. The Deed was not recorded at that time.

Jimmy met Patricia in 2010, and they married in 2015. Jimmy and Patricia claimed the Property as their homestead and shared expenses associated with the Property, and Jimmy made the mortgage payments directly to Wells Fargo. However, Jimmy also—at least during the years of 2009 and 2010—reported to Rosenstein that the mortgage payments had been made by mailing Rosenstein copies of the mortgage checks Jimmy had paid to Wells Fargo and copies of his monthly mortgage statements from the bank.

Jimmy died in June 2020 and his will was admitted to probate as a muniment of title, with Patricia as his sole beneficiary.[2] Patricia then paid off the remaining $40,000 on the Wells Fargo loan and obtained a release of that lien. She also had the manufactured home on the Property titled in her name and declared as real property.

---

[2]Jimmy's will provided that Patricia would receive his entire estate upon his death, to include all of his "real, personal[,] or mixed" property.

On April 15, 2021, Rosenstein finally recorded the Deed.

At trial, Patricia testified that she did not know that Rosenstein existed or about his claim to the Property until he recorded the Deed in 2021. She explained that, after learning of Rosenstein's claim to the Property, she searched through Jimmy's personal records but did not find any evidence of the Deed, Lease, or any other agreement between Rosenstein and Jimmy.

According to Rosenstein, his legal services arrangement with Jimmy was premised on the understanding that Jimmy's 2009 felony case would be Rosenstein's highest priority to ensure its speedy resolution. Rosenstein testified that, after the Deed and Lease were signed in 2009, he had never been to the Property or performed any actions in his role as purported landlord under the Lease. He admitted that he had never paid ad valorem taxes or obtained insurance for the Property and had never reported any rental income or otherwise claimed the Property for tax purposes. It was not until after Jimmy died that Rosenstein learned that Jimmy and Patricia had married. Rosenstein asserted that Jimmy had not paid "a dime" for his legal representation and that he had never advanced Jimmy money, agreed to give the property back to Jimmy, or given Jimmy a repurchase option. He explained that Jimmy had asked him not to record the Deed in 2009 because doing so might have "mess[ed] up [Jimmy's] mortgage veteran VA thing that [he] got with Wells Fargo or whatever the name of that company is."

5

## B. PROCEDURAL BACKGROUND

Patricia sued Rosenstein for declaratory judgment and asserted causes of action for pretended sale of a homestead, violation of the TDTPA, innocent grantee for value without notice, unjust enrichment, and estoppel. She requested the trial court to quiet title in her name and to declare the Deed void. Rosenstein answered, raising affirmative defenses of statute of limitations, laches, and lack of standing. He did not file a counterclaim.

After a bench trial, the trial court declared that the Deed was "a security instrument securing payment for" Rosenstein's legal services rather than a conveyance and that the Property was vested in fee simple absolute in Patricia, and the trial court awarded her $20,000 in attorney's fees. Rosenstein filed a motion for new trial (which was overruled by operation of law) and requested findings of fact and conclusions of law.

The trial court issued its findings of fact and conclusions of law, which included the following:

Findings of Fact

- Patricia lived at the Property at all times after she married Jimmy in 2015, and she and Jimmy treated it as their homestead;

- "During their marriage, Patricia and Jimmy paid the mortgage, ad valorem taxes, and insurance on the Property" and "made valuable improvements to the Property";

- "Record title to the Property remained in Jimmy's name at the time of his death";

- "In or about September 2020, Patricia paid $39,997.14 to pay off and discharge the mortgage on the Property";

- "Patricia was the sole beneficiary and devisee named" in Jimmy's will;

- "Patricia paid off the mortgage on the Property in reliance on the fact [that Jimmy's will] had been admitted to probate and on a title search . . . confirming no cloud on her title existed of record";

- "Patricia had no knowledge of Rosenstein's involvement with Jimmy until the recorded Deed came to her attention";

- Rosenstein "exhibited no indicia of ownership of the Property" such as paying ad valorem taxes or complying with landlord requirements under the Texas Property Code;

- If the Deed had served as a conveyance, Rosenstein would have been unjustly enriched by Patricia's mortgage payoff;

- "It would be unconscionable for Rosenstein to receive the Property as a fee for the legal services he provided Jimmy";

- The Deed was intended to be a security instrument to secure payment for Rosenstein's legal services;

- "The Deed was intended to be a mortgage not a conveyance"; and

- The attorney's fees awarded to Patricia are reasonable and necessary pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

Conclusions of Law

- "Upon probate of [Jimmy's will], title to the Property vested in Patricia in fee simply absolute";

- Patricia's causes of action accrued on April 15, 2021, and her claims were not barred by limitations;

- Patricia had standing to assert her claims; and

- Patricia is not Jimmy's heir under Section 13.001(b) of the Property Code.

## II. DISCUSSION

### A. LEGAL AND FACTUAL EVIDENTIARY SUFFICIENCY ISSUES

In his first two issues, Rosenstein argues that the evidence was legally and factually insufficient to support the trial court's findings that (1) the Deed was intended to be a security instrument and (2) Patricia's attorney's fees were reasonable and necessary.

### 1. Standards of Review

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As with jury findings, a trial court's fact-findings on disputed issues are not conclusive, and when—as here—the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.). We review the sufficiency of the evidence supporting challenged findings using the same standards that we apply to jury findings. *Catalina*, 881 S.W.2d at 297.

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *see also Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*,

715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Both direct and circumstantial evidence may be used to establish any material fact. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). A fact is established by circumstantial evidence when it can be fairly and reasonably inferred from other facts proved in the case. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). When conducting a factual-sufficiency review, a court of appeals must not merely substitute its judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.*

Further, if the evidence is factually sufficient, then it is necessarily legally sufficient and we need not also analyze for legal sufficiency. *Citizens Nat'l Bank v. Allen Rae Invs, Inc.*, 142 S.W.3d 459, 485 (Tex. App.—Fort Worth 2004, no pet.); *see Kadow v. MAA, Watermark*, No. 02-22-00038-CV, 2022 WL 17841131, at *3 (Tex. App.—Fort Worth Dec. 22, 2022, no pet.) (mem. op.).

### 2. Trial Court's Finding That Deed Was a Security Instrument

Rosenstein first argues that the evidence was legally and factually insufficient to support the trial court's finding that the Deed was intended to be a security instrument to secure payment for Rosenstein's legal services rather than a conveyance of the Property to him. We disagree.

10

First, Rosenstein did not challenge every ground and finding upon which the judgment could stand. "[I]f an independent ground may fully support the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, then we 'must accept the validity of that unchallenged independent ground and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment.'" *S.W. ex rel. A.W. v. Arlington Ind. Sch. Dist.*, 435 S.W.3d 414, 419 (Tex. App.—Fort Worth 2014, no pet.) (cleaned up) (quoting *Britton v. Tex. Dep't of Crim. Just.*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.). "When findings of fact are sent by the trial court they must form the basis of the judgment upon all grounds of recovery and of defense embraced therein." Tex. R. Civ. P. 299. "[I]f the trial court's findings of fact are not challenged by a point of error on appeal, they are binding upon the appellate court." *Trammell v. Trammell*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

Apart from her claim that the Deed was intended as a security instrument rather than a conveyance, Patricia pleaded various alternative grounds upon which she argued that the Deed was void and title to the Property belonged in her name. These grounds included that (1) she was an innocent grantee for value without notice pursuant to Section 13.001 of the Texas Property Code; (2) it would be unjust enrichment for Rosenstein to receive the property in exchange for the limited legal services he provided; and (3) he was estopped from claiming ownership of the

11

Property because such would be unconscionable considering that he concealed the Deed and Patricia paid off the mortgage and obtained title to the Property without notice of the Deed. And the trial court issued findings of fact and conclusions of law supporting each of these alternative grounds. However, Rosenstein does not assign error to any of these alternative grounds or findings, complaining only that the trial court erred in finding that the Deed was a security instrument. Because Rosenstein has not complained on appeal of the alternative grounds and findings that could support the judgment, we must affirm the trial court's judgment.[3] *See id.*

Further, even if this issue had been adequately raised by Rosenstein, the evidence was sufficient to support the trial court's finding that the Deed was a security instrument.

"A transfer of title that is absolute on its face may nonetheless be shown to have been intended as a mortgage given to secure a debt." *Alvarado v. Alvarado*, No. 13-00-690-CV, 2002 WL 1072067, at *4 (Tex. App.—Corpus Christi–Edinburg

---

[3]Rosenstein makes a cursory and implicit argument—without any legal support—that, because the trial court's written judgment referenced only Patricia's pretended sale claim, that her alternative grounds could not support the judgment because she "did not file a cross-appeal challenging these issues." This argument fails because findings made within the judgment are supplanted by any written findings of fact filed separately by the trial court. Tex. R. Civ. P. 299a ("Findings of fact must not be recited in a judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes."); *see Land v. Land*, 561 S.W.3d 624, 632 n. 3 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Thus, here we must look to the trial court's separately-filed findings of fact—which *do* address Patricia's alternative grounds—in making our decision.

May 30, 2002, pet. denied) (citing *Bantuelle v. Williams*, 667 S.W.2d 810, 815–16 (Tex. App.—Dallas 1983, writ ref'd n.r.e.); *see Johnson v. Cherry*, 726 S.W.2d 4, 7 (Tex. 1987) ("When there is a finding supported *by some probative evidence* that a disputed transaction, although written as a deed, is actually a mortgage, the law will impute the existence of an enforceable debt, thereby creating the debtor/creditor relationship necessary to every mortgage.") (emphasis added). "The circumstances preceding, surrounding, and subsequent to the transaction may all be viewed in determining whether a transaction was truly intended as a fee simple transfer, or merely as a loan or a mortgage." *RBS Mortg., LLC v. Gonzalez*, No. 04-11-00681-CV, 2013 WL 749730, at *3 (Tex. App.—San Antonio Feb. 27, 2013, no pet.) (mem. op.); *see Bantuelle*, 667 S.W.2d at 816. The issue of whether an instrument was intended to be a deed or a mortgage is a question of fact. *Johnson*, 726 S.W.2d at 6.

Here, the Contract provided that Jimmy would pay a nonrefundable $22,500 retainer for Rosenstein's pretrial representation, which—because Jimmy did not then have the cash to pay the retainer—would "consist of" a transfer of the Property from Jimmy to Rosenstein. This fee did not cover any expenses or trial representation, the latter of which would have required Jimmy to front at least another $30,000. Though Jimmy executed the Deed and the Lease, Jimmy never paid any rent directly to Rosenstein. Then, for more than a decade, Rosenstein did nothing to indicate that the Property had been conveyed to him. He did not record the Deed, visit the Property, pay the taxes, insure the property in his name, perform his landlord duties, or claim

13

the Property or rental income therefrom for tax purposes. Instead, it was Jimmy and Patricia who acted as the owners of the Property. They lived on the Property, paid the taxes, paid the mortgage and other expenses, improved it, insured it, and claimed it as their homestead.

From this evidence, the trial court could have reasonably found that the parties did not intend for Jimmy to use his homestead as payment for $22,500 worth of (exclusively pretrial) legal services but that they instead intended for the Deed to secure payment for those services. In other words, this finding was supported by some probative evidence that was not so weak, or so contrary to the overwhelming weight of all the evidence. *Johnson*, 726 S.W.2d at 7; *Pool*, 715 S.W.2d at 635.

For these reasons, we overrule Rosenstein's first issue.

### 3. Trial Court's Award of Attorney's Fees

In his second issue, Rosenstein argues that the evidence was legally and factually insufficient to support the trial court's award of Patricia's attorney's fees. Specifically, he argues that Patricia did not present sufficient evidence of her attorney's hourly rate, the total time spent on the case, and the specific services rendered, and that she did not appropriately segregate her fees between those that were recoverable and nonrecoverable. We agree that Patricia's attorney's-fees evidence was insufficient.

The only evidence submitted to the trial court on the issue of Patricia's attorney's fees came from her attorney's oral testimony—he did not supply a written

14

affidavit or billing records. He testified as to his qualifications and experience as an attorney and stated that he charges $300 per hour for his services. As to the particular services performed and hours expended, Patricia's attorney testified as follows:

> I had to interview the case. I had to brief out the law that was relevant to it. I had to prepare the Plaintiff's pleadings in this case. I think we're up to our second amended original petition.
>
> I've conducted discovery in this case. I have represented her in the eviction suit that was filed and then dismissed. I represented her in a 91a motion in this case, which was denied. And I represented her -- prepared a response and represented her in a -- in the Defendant's motion for summary judgment which was also denied.
>
> I have taken time to prepare for the trial of this case. I've arranged for the various exhibits, and I have expended numerous – a number of hours. I'm – right now I've had 20 – approximately 21.5 hours not counting today and if we go on until tomorrow. But as of the 22nd of September, my fees were a little over $16,000, and depending on how this trial goes, my fees will probably exceed $20,000.

"When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). Both the reasonableness and the necessity of a fee are fact questions. *Id.*

The lodestar method of fee calculation applies "to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Id.* at 498. With the lodestar method, "the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of

15

providing sufficient evidence on both counts." *Id.* Sufficient evidence of a reasonable and necessary fee "includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* Contemporaneous billing records are not strictly required to prove the reasonableness and necessity of requested fees but are *strongly* encouraged. *Id.* at 502. Generalities about tasks performed do not provide sufficient information for the fact finder "to meaningfully review whether the tasks and hours were reasonable and necessary under the lodestar method." *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014); *see City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (reversing attorney's-fees award when the attorney testified to the time expended and the hourly rate but failed to provide evidence of the time devoted to specific tasks). When the evidence is not sufficient to make a lodestar calculation, we must reverse and remand for the trial court to determine the appropriate amount of attorney's fees. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012).

Patricia's attorney offered only generalities as to broad categories of tasks that he performed and provided almost no explanation as to the amount of time spent on each of those tasks. *See Long*, 442 S.W.3d at 255 (reversing attorney's-fees award when the attorney's affidavit spoke generally about the tasks performed and the number of hours spent on those tasks). The only indication given as to the specific

16

time spent on Patricia's case was that he had expended 21.5 hours preparing for and presenting her case at trial. No evidence was supplied concerning time expended on the other pretrial tasks that he testified to.

For these reasons, we sustain Rosenstein's second issue.

## B. STATUTE OF LIMITATIONS

In his third issue, Rosenstein contends that the trial court erred in concluding that Patricia's pretended-sale claim was not barred by the applicable statute of limitations. He argues that the law is clear that "a party to a deed has four years from the date of execution of the deed to seek to cancel it as an improper or pretended sale of a homestead." Thus, in Rosenstein's view, the statute of limitations governing Patricia's claim that the Deed was intended as a security instrument began to run in 2009 when Jimmy executed the Deed, thus barring Patricia from bringing her action in 2021. We disagree because (1) a purported deed that is found to be a mortgage is void and thus not subject to a statute of limitations, and (2) even if the statute of limitations was four years, it did not begin to run against Patricia until an actual controversy existed between her and Rosenstein.

A deed that is found to be intended as a security instrument is void. *Johnson*, 726 S.W.2d at 7 (holding that deed imputed as a mortgage was "null and void"); *Wood v. De Winter*, 280 S.W. 303, 307 (Tex. App.—Fort Worth 1926, no writ) ("If the instrument was at the time of its execution intended by the parties thereto as a mortgage and security for a loan, it was a void instrument as such . . . ."); *see* Tex.

17

Const. art. XVI, § 50(c) ("All pretended sales of the homestead involving any condition of defeasance shall be void."); *Sudderth v. Howard*, 560 S.W.2d 511, 516–17 (Tex. App.—Amarillo 1977, writ ref'd n.r.e.) ("What the constitution declares void cannot be made valid by an agreement between the primary parties . . . ."). "[A]n equitable action to remove cloud on title is not subject to limitations if a deed is void or has expired by its own terms." *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007); *Poag v. Flories*, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied).

Accordingly, because the Deed here was void, no statute of limitations applied to Patricia's quiet title action and her pretended-sale claim was not thus barred. *See Ford*, 235 S.W.3d at 618.

But even if a four-year limitations period applied here, it would not have barred Patricia's claims. "As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003); *see* Tex. Prop. Code Ann. § 13.002 ("An instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument."); *see also Poag*, 317 S.W.3d at 827 (explaining that the recording of a deed charged appellant with notice and commenced the statute of limitations related to his claims to set aside the deed). More specifically, a declaratory judgment action—like the one brought by Patricia—does not accrue "until there is an actual controversy between the parties."

*In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, no pet.); *see Vann v. Homeowner's Ass'n for Woodland Park of Georgetown, Inc.*, No. 03-18-00201-CV, 2018 WL 4140443, at *6 (Tex. App.—Austin Aug. 30, 2018, no pet.) (mem. op.) (collecting cases); *cf. Evans v. Graves*, 166 S.W.2d 955, 958 (Tex. App.—Dallas 1942, writ ref'd w.o.m.) ("Though appellant[] might have been able to maintain a suit during the life estate to quiet title, yet she was not compelled to do so until a right of possession accrued.").

At the very earliest, a legal controversy arose between Patricia and Rosenstein on July 13, 2020, when she first took purported title to the Property via Jimmy's probated will. Before that date, she had no legal right to the property and, necessarily, no right to seek any related legal remedy. Accordingly, even if a four-year statute of limitations applied to Patricia's claims, she would have been required to file suit only before July 14, 2024—which she did.

For these reasons, we overrule Rosenstein's third issue.

### C. STANDING

In his fourth issue, Rosenstein argues that the trial court erred in concluding that Patricia had standing to bring her suit. He contends that, because he was granted title to the Property in 2009 via the Deed, the Property was not part of Jimmy's estate and could not have been devised to Patricia through Jimmy's will. Thus, says Rosenstein, Patricia did not have a justiciable interest in the Property. Again, we disagree.

19

A void deed cannot pass title.  *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 601 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see Slaughter v. Qualls*, 162 S.W.2d 671, 674 (Tex. 1942) ("The rule has long been established in this State that where a deed is absolutely void, a suit at law in trespass to try title may be maintained to recover the land without setting the deed aside . . . .").  Further, a beneficiary who has interest in estate property under a probated will has standing to sue to enforce that interest.  *Houston v. Ludwick*, No. 14-09-00600-CV, 2010 WL 4132215, at *4 (Tex. App.—Houston [14th Dist.] Oct. 21, 2010, pet. denied) (mem. op.).

As we explained above, the Deed was void and, thus, never passed title in the Property to Rosenstein.  *Lighthouse Church of Cloverleaf*, 889 S.W.2d at 601.  Instead, title passed from Jimmy's estate to his sole beneficiary, Patricia, when his will was probated as a muniment of title, giving Patricia standing to bring her quiet-title claim. *Id.*

For these reasons, we overrule Rosenstein's fourth issue.

### III.  CONCLUSION

Having sustained Rosenstein's second issue that the evidence was insufficient to support the trial court's award of attorney's fees, we reverse that award and remand this case for a determination of the reasonable and necessary attorney's fees.  *See El Apple I, Ltd.*, 370 S.W.3d at 764.  Having overruled issues one, three, and four, we affirm the remainder of the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  January 11, 2024